PEOPLE v LaLONE

Docket No. 79221. Argued March 8, 1988 (Calendar No. 3). Decided
    March 30, 1989. Rehearing denied *post,* 1236.

Daniel J. LaLone was convicted by a jury in the Clinton Circuit
    Court, Randy L. Tahvonen, J., of first-degree criminal sexual
    conduct. The complainant is his stepdaughter. The Court of
    Appeals, CYNAR, P.J., and R. B. BURNS and O'BRIEN, JJ., af-
    firmed in an unpublished opinion per curiam (Docket No.
    84966). The defendant appeals, alleging that the exclusion by
    the trial court under the rape-shield statute and MRE 404(a)(3)
    of the complainant's sexual history with third parties violated
    his Sixth Amendment right of confrontation, that the rule of
    evidence supersedes the rape-shield statute, and that admission
    by the trial court under the medical treatment and diagnosis
    exception to the hearsay rule of a psychologist's testimony
    recounting the complainant's allegations of sexual abuse was
    improper.

    The Supreme Court *held:*

    —The exclusion of evidence of the complainant's sexual
history was not violative of his Sixth Amendment right of
confrontation.

    —Leave was improvidently granted on the issue whether
MRE 404(a)(3) supersedes the rape-shield statute.

    —The admission of hearsay statements of the complainant's
allegations in the psychologist's testimony was error.

    —The case is reversed and remanded for a new trial.

    Justice BRICKLEY, joined by Chief Justice RILEY and Justice
GRIFFIN, stated that the exclusion of the evidence regarding the
complainant's sexual history did not violate the rape-shield
statute or the defendant's Sixth Amendment right of confronta-
tion. However, the admission of hearsay statements of the
complainant's allegations in the psychologist's testimony was
error, requiring reversal and remand for a new trial.

    1. The rape-shield statute, MCL 750.520j(1); MSA
28.788(10)(1), excludes all evidence of a complainant's sexual
history regardless of the purpose for which it is introduced
unless it falls within an exception enumerated in the statute
and is found to be more probative than prejudicial. The focus in

a criminal sexual conduct prosecution is on the merits of the accused's guilt or innocence, rather than the victim's sexual behavior, because, in the overwhelming majority of such prosecutions, the complainant's sexual conduct with parties other than the defendant is neither an accurate measure of the complainant's veracity nor determinative of the likelihood of consensual sexual relations with the defendant. The exclusion of such evidence under the rape-shield statute may violate a defendant's Sixth Amendment right of confrontation where the evidence is offered for the narrow purpose of showing a complaining witness' bias, or where such conduct may be probative of a complainant's ulterior motive for making a false charge. In this case, the evidence proffered by the defendant does not fall within the exceptions enumerated in the statute.

2. The Sixth Amendment right of confrontation rests upon an accused's ability to cross-examine a particular witness in a fashion which effects an accurate perception of the witness by the trier of fact. While the discovery of any witness' bias is relevant, a trial court may limit the means by which such bias is determined on cross-examination. A party is guaranteed an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. To determine whether a defendant was denied the opportunity for effective cross-examination, it is necessary to decide whether the exclusion of the evidence proffered for the purpose of showing a witness' bias or motive to fabricate rises to the level of constitutional error. If constitutional error is present in fact it must be proved to be harmless beyond a reasonable doubt. In this case, because the defendant was not precluded from introducing significant nonsexual evidence from which the complainant's bias could be inferred, the exclusion of her sexual history was not error violative of the defendant's Sixth Amendment rights. Even if the exclusion were determined to be error, in light of the matters brought out on cross-examination, its effect upon the verdict was harmless beyond a reasonable doubt.

3. MRE 803(4) provides for the admission of statements made by a victim for the purposes of medical treatment or diagnosis which describe the victim's medical history or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source of an injury, reasonably necessary for such diagnosis or treatment. A declarant's identification of the person responsible for the declarant's condition may not be admitted under MRE 803(4). Although a patient's assertion of the identity of an assailant may be

relevant to psychological treatment, it has not been shown that the reliability of such statements reaches the level necessary to fall within MRE 803(4). In this case, it is not clear that the actual reason for the meeting between the complainant and the psychologist was in connection with treatment. The complainant had already made accusations against the defendant and was aware that a case against him was being prepared. Thus, the meeting did not have the same measure of reliability as a normal therapy session. The statements of the psychologist did not fall within the literal or the intended purpose of MRE 803(4), and their admission was error.

Justice ARCHER, concurring in part and dissenting in part, stated that under the facts of the case, the defendant's inability to cross-examine the complainant concerning her alleged sexual behavior with third parties for the purpose of showing bias and a motive to fabricate did not violate the defendant's Sixth Amendment rights of confrontation and effective cross-examination; the rape-shield statute is superseded by MRE 404(a)(3) pursuant to the rule-making authority of the Supreme Court under Const 1963, art 6, § 5; and the psychologist's hearsay testimony was properly admitted under MRE 803(4).

1. The rape-shield statute, MCL 750.520j(1); MSA 28.788(10)(1), excludes all evidence of a complainant's sexual history regardless of the purpose for which it is introduced unless it falls within an exception enumerated in the statute and is found to be more probative than prejudicial. The focus in a criminal sexual conduct prosecution is on the merits of the accused's guilt or innocence, rather than the victim's sexual behavior, because, in the overwhelming majority of such prosecutions, the complainant's sexual conduct with parties other than the defendant is neither an accurate measure of the complainant's veracity nor determinative of the likelihood of consensual sexual relations with the defendant. The exclusion of such evidence under the rape-shield statute may violate a defendant's Sixth Amendment right of confrontation where the evidence is offered for the narrow purpose of showing a complaining witness' bias, or where such conduct may be probative of a complainant's ulterior motive for making a false charge.

2. The Sixth Amendment right of confrontation rests upon an accused's ability to cross-examine a particular witness in a fashion which effects an accurate perception of the witness by the trier of fact. While the discovery of any witness' bias is relevant, a trial court may limit the means by which such bias is determined on cross-examination. A party is guaranteed an opportunity for effective cross-examination, not cross-examina-

tion that is effective in whatever way, and to whatever extent, the defense might wish. To determine whether a defendant was denied the opportunity for effective cross-examination, it is necessary to decide whether the exclusion of the evidence proffered for the purpose of showing a witness' bias or motive to fabricate rises to the level of constitutional error. If constitutional error is present in fact it must be proved not to be harmless beyond a reasonable doubt. In this case, because the defendant was not precluded from introducing significant nonsexual evidence from which the complainant's bias could be inferred, the exclusion of her sexual history was not error violative of the defendant's Sixth Amendment rights. Even if the exclusion were determined to be error, in light of the matters brought out on cross-examination, its effect upon the verdict was harmless beyond a reasonable doubt. Likewise, the exclusion of the defendant's proffered evidence under MRE 404(a)(3) did not violate the defendant's right of confrontation.

3. MRE 404(a)(3) supersedes the rape-shield statute. Under the Michigan Constitution, where any rule of practice set forth by statute conflicts with a rule of practice adopted by the Supreme Court, it remains in effect only until it is superseded by a court rule promulgated by the Supreme Court. Because the provisions of MRE 404(a)(3) are at odds with those of the rape-shield statute, the evidentiary rule must be found to supersede the statute and to control in all subsequent prosecutions of criminal sexual conduct.

4. MRE 803(4), the medical diagnosis and treatment exception to the hearsay rule, is applicable in this case. Statements by a declarant need not be made only to a physician. The focus of the exception is on the declarant's motivation in making the statement, rather than on to whom the statement was made. In determining whether a sexual-assault victim's statements are reasonably pertinent to diagnosis and treatment, the declarant's motive in making the statements must be consistent with treatment and diagnosis, and the statements must be shown to be those which would be reasonably relied upon in formulating treatment and diagnosis. Although ordinarily the identification of a sexual-assault victim's assailant would be inadmissible under MRE 803(4), in instances of parental sexual abuse, such as this case, the nature of the abuse, the relationship between the parties, and the complainant's age at the time the alleged assaults began, and her awareness of the purpose of the evaluation all support the conclusion that the statements concerning the assaults and the identification of the defendant as the

perpetrator were reasonably necessary for diagnosis and treatment.

Justice BOYLE, concurring, agreed with Justice BRICKLEY that leave was improvidently granted with regard to whether MRE 404(a)(3) supersedes the rape-shield statute, and with Justice ARCHER as to parts I and III of his opinion.

Justice LEVIN, joined by Justice CAVANAGH, stated that while the case should be reversed and remanded for a new trial because of the psychologist's testimony relating hearsay statements, upon retrial the evidence of the conflict between the defendant and the complainant concerning her efforts to have sexual relationships with teenage boys should be admitted because a reasonable jury might have received a significantly different impression of the complainant's credibility had it been introduced to show bias or a motive to fabricate.

Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Jon Newman,* Prosecuting Attorney, and *Mary C. Pino,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Herb Jordan*) for the defendant.

BRICKLEY, J. Defendant was convicted of first-degree criminal sexual conduct, MCL 750.520b(1)(b); MSA 28.788(2)(1)(b). The Court of Appeals affirmed his conviction in an unpublished per curiam opinion.[1] Defendant appealed in this Court, and we granted leave[2] to consider the following issues: 1) whether the proposed testimony and cross-examination concerning the complainant's sexual contact with a third person were properly excluded under the rape-shield statute, MCL 750.520j(1); MSA 28.788(10)(1); 2) whether the proposed testimony and cross-examination concerning the complainant's sexual contact with a

[1] *People v LaLone,* unpublished opinion per curiam of the Court of Appeals, decided June 12, 1986 (Docket No. 84966).

[2] 428 Mich 885 (1987).

third person were properly excluded under MRE 404(a)(3) and whether MRE 404(a)(3) supersedes the rape-shield statute; and 3) whether the trial court erred by admitting, under MRE 803(4), the medical diagnosis and treatment exception to the hearsay rule, a psychologist's hearsay testimony that complainant named the defendant as her assailant.

I

The facts of this case are set forth in Justice ARCHER's opinion.

II

We conclude, for the reasons set forth in sections I(A) and I(B) of Justice ARCHER's opinion, that the exclusion of evidence of complainant's sexual history did not violate either the rape-shield statute or the defendant's Sixth Amendment right of confrontation.

We do not, however, address whether MRE 404(a)(3) supersedes the statute or whether the exclusion of the evidence of complainant's sexual history violates that rule. Rather, we determine that leave was improvidently granted as to those issues. At trial, defense counsel did not argue that admission was proper under the rule, and the trial judge did not base his rulings in limine on such a conflict. Moreover, the Court of Appeals did not address the claim, having not been asked to do so. While the issues are of significance, we conclude that we should not address them without a full record having been developed below.

III

The trial court admitted testimony of Dr. Joan

Jackson Johnson, the substance of which was the complainant's hearsay statements that she had been sexually abused by the defendant, her step-father.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"[3] and may only be admitted if provided for in an exception to the hearsay rule. *People v Eady,* 409 Mich 356; 294 NW2d 202 (1980). MRE 803(4) provides for admission of

> [s]tatements made for purposes of medical treat-
> ment or medical diagnosis in connection with
> treatment and describing medical history, or past
> or present symptoms, pain, or sensations, or the
> inception or general character of the cause or
> external source thereof insofar as reasonably nec-
> essary to such diagnosis and treatment.

This Court has never had occasion to consider whether MRE 803(4) may serve as a basis for the admission of hearsay statements as to the identity of the perpetrator of a crime. Further, we have not considered its use where the witness is a psychologist.

A psychologist treats mental and emotional disorders rather than physical ones.[4] Lying to one's health care provider about symptoms and their general causes would be detrimental to the patient, and it is, in part, for this reason that we permit the introduction of such hearsay statements. It is therefore fair to say that, while medical patients may fabricate descriptions of their complaints and the general character of the causes

---

[3] MRE 801(c).

[4] We note that a psychologist does not provide "medical treatment." However, our holding lies not in a technical reading of the rule, but with broader concerns about the reliability of the hearsay statements.

of these complaints, we would think it less likely that they will do so than psychological patients. In addition, although there are psychological tests, fabrications of physical complaints would seem to be far easier to discover through empirical tests than are fabrications which might be heard by an examining psychologist. Indeed, statements which are untrue, and which the examining psychologist knows to be untrue, may nevertheless serve as a basis for accurate diagnosis and treatment.[5] Thus, statements made in the course of the treatment of psychological disorders may not always be as reliable as those made in the course of the treatment of physical disorders.

The introduction of hearsay statements such as those admitted in the instant case is of concern for a second reason. Not only are we less able to ascertain their reliability than those made to a medical doctor, but they identify the person who caused the declarant's pain. It has long been the rule that the declarant's naming of the person responsible for his condition may not be admitted pursuant to the hearsay exception described in MRE 803(4).[6] Indeed, the common-law predecessor of MRE 803(4) was of an even more limiting nature. In an early case discussing that rule, this Court stated:

> [Statements of pain and its locality] are admit-

[5]   As a general rule, all statements made in this context, regardless of their content, are relevant to diagnosis and treatment since experts in the field view *everything related to the patient* as relevant to his personality. [4 Weinstein & Berger, Evidence, ¶ 803(4)[01], p 803-150.]

[6]   [This hearsay exception] has never been held to apply to accusations of personal fault, either in a civil or criminal context. [*United States v Narciso*, 446 F Supp 252, 289 (ED Mich, 1977).]

ted only upon the ground that they are the natural and ordinary accompaniments and expressions of suffering. It would be impossible in most cases to know of the existence or extent or character of pain without them. They are received therefore as acts rather than declarations, and admitted from necessity. The rule . . . has never been extended so as to include declarations . . . of the causes in the past of such suffering, so as to make such statements proof of the facts. Declarations concerning the past are narratives and not acts. [*Grand Rapids & I R Co v Huntley,* 38 Mich 537, 543-544 (1878).]

We do not suggest that the bounds of MRE 803 should be defined by its precodification common-law parallels. In fact, the exception defined in MRE 803(4) inarguably goes beyond that defined in common law because it permits the introduction of statements describing "past . . . symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof . . . ." See also the committee note to MRE 803(4). However, while the drafters of the rule clearly intended to go beyond the common law, we do not believe that they intended that the victim's naming of her assailant should be considered a description of the *general* character of the cause or external source" of an injury. To read the exception to provide for such hearsay, particularly in the context of psychological treatment, would clearly broaden the nature of the exception beyond the scope intended by its drafters.

The recent trend to broaden this hearsay exception rests primarily on two decisions of the United States Court of Appeals for the Eighth Circuit. In *United States v Iron Shell,* 633 F2d 77 (CA 8, 1980), the court held that the testimony of a physician who examined a nine-year-old victim of a sexual assault could be admitted even though it

contained a repetition of the complainant's description of the general cause of her injury, i.e., a sexual assault. The testimony did *not* include the complainant's naming of the defendant as her assailant. In admitting this testimony, the *Iron Shell* panel defined a two-pronged test for admission of hearsay evidence pursuant to FRE 803(4). First, the declarant's motive in making the statement must be consistent with the purposes of the rule, i.e., the promotion of treatment. Second, the content of the statement must have been of the type reasonably relied upon by a physician in diagnosis or treatment. *Id.,* p 84. In *Iron Shell,* the admitted hearsay involved only the occurrence and nature of the attack. No attempt was made to introduce the identity of the assailant. Indeed, the *Iron Shell* court, *supra* at 85, cited *United States v Nick,* 604 F2d 1199, 1201-1202 (CA 9, 1979), and noted that in *Nick*

> the examining physician was allowed under rule 803(4) to repeat the child's description of the assault including the victim's statements concerning the cause of the injury *while omitting any comments about the identity of the assailant.* [Emphasis supplied.]

In addition, the complainant was treated by a physician immediately after the rape, and the fact that she had been raped was physically confirmed.

While *Iron Shell* kept within the bounds of the language of the rule by admitting hearsay testimony describing only the general nature of the cause of complainant's injury, the Eighth Circuit later used the *Iron Shell* test to significantly expand the scope of the hearsay exception in *United States v Renville,* 779 F2d 430 (CA 8, 1985). In *Renville,* the eleven-year-old complainant was examined by a physician who testified that the com-

plainant had told him that she had been subjected to repeated acts of sexual abuse by the defendant. In affirming the admission of the testimony, the panel held that cases of child sexual abuse fell outside the rule that the identity of the individual allegedly responsible for a declarant's injuries may not be revealed pursuant to FRE 803(4), since the knowledge that the assailant is a member of the same household is pertinent to the treatment required. The panel noted that child abuse involves more than physical injury and that proper psychological treatment requires knowledge of which member of the household was the abuser. The court also noted that a physician must take protective actions such as removing the child from the home upon learning that intrafamily child sexual abuse is occurring and that therefore the identity of the perpetrator is a fact "relied on" by the physician.

As we have just discussed, the identity of an assailant cannot fairly be characterized as the "*general* cause" of an injury. The *Renville* court did not address this difficulty in its analysis.[7] Further, as we have already noted *ante,* the statements in this case were made to a psychologist rather than to a physician and this suggests that the statement by the victim in this case may be less reliable than a statement made to a physician.

---

[7] The *Iron Shell* court emphasized that

[i]t is important to note that the statements concern what happened rather than who assaulted [the complainant]. The former in most cases is pertinent to diagnosis and treatment *while the latter would seldom, if ever,* be sufficiently related. [633 F2d 84. Emphasis added.]

Adoption of the *Renville* analysis would, in contrast to the intended narrow scope of *Iron Shell,* virtually assure that the identity of the assailant could *always* be admitted through hearsay testimony where the crime involves sexual abuse of a child.

Thus, although we recognize that the patient's assertion of the identity of the assailant is relevant to psychological treatment, it has not been shown that the reliability of the complainant's statement reaches the level necessary to fall within MRE 803(4). In addition, we do not believe that a physician's reliance on the victim's statements in order to take protective action is of the sort envisioned by the drafters of MRE 803(4). The rule is most specific in limiting the exception to "medical treatment or medical diagnosis" or other information "necessary to such diagnosis or treatment." It did not leave room for speculation on hearsay which may indeed be reliable and useful for other kinds of treatment for the victim, such as security from further criminal activity. It is natural and appropriate that a psychologist or physician confronted with such accusations take immediate measures to protect the child even if it is not certain that actual abuse occurred. The determination as to the occurrence of abuse can be reevaluated after protective measures have been taken. In such a setting, it is likely that the nature of the psychologist's reliance on the statement for purposes of taking protective action is of a different and more readily found type than the reliance originally intended to suggest a sufficient level of reliability for admission as hearsay.[8]

In addition, we note that the relevant Michigan rule is narrower than the federal rule construed in *Renville*. The federal rule permits the introduction of "[s]tatements made for purposes of medical diagnosis or treatment," while the Michigan rule requires that the diagnosis be "in connection with

---

[8] Indeed, MCL 722.623; MSA 25.248(3) requires physicians, psychologists, and others to report to the Department of Social Services any instances of child abuse which they have "reasonable cause" to suspect. Failure to make such a report creates civil liability and is punishable as a misdemeanor. MCL 722.633; MSA 25.248(13).

treatment."[9] The prosecution claims that complainant's hearsay statements were indeed made during the course of treatment. Defendant claims that the statements were made at a meeting between Dr. Jackson Johnson and complainant held pursuant to a probate court order that complainant and her accusations be evaluated by a psychologist. The record is not clear as to the actual impetus for that meeting. However, it is clear that complainant's September 23, 1983, meeting with Dr. Jackson Johnson occurred after she told police authorities that her stepfather had abused her and the investigation into the truth of those accusations had been initiated. While the precise nature of the September 23, 1983, meeting cannot be determined, it did not have the same measure of reliability as would even a normal psychological therapy session, since the complainant had already made the accusations and she was aware that a case against the defendant was being prepared. Defendant claims that the entire story was fabricated. If so, then surely once complainant had offered the story to the police, she would offer consistent statements to a psychologist.

We also note that Dr. Jackson Johnson testified at the motion in limine that the complainant's assertions to her regarding the identity of the assailant were reliable. While she did not so testify at trial, the concern arises whether we should enter into an area which may involve expert testimony on the credibility of a complainant's allegations. Such testimony might violate other rules of evidence. See *State v Aguallo,* 318 NC 590, 598-599; 350 SE2d 76 (1986). In addition, the purpose of hearsay exceptions is to permit the introduction of such statements where they possess a sufficient inherent degree of reliability. If, in laying the

---

[9] See committee note (1) to MRE 803.

foundation for admission of a hearsay statement the offering party must provide expert testimony that the hearsay is reliable, then the very basis for the hearsay exception is undercut.

For all these reasons, we conclude that the hearsay statements testified to by Dr. Jackson Johnson do not fall within either the literal or intended purpose of MRE 803(4) and therefore were erroneously admitted. In doing so, we recognize that no court has fully rejected the *Renville* analysis, although some have disagreed as to its scope and application.[10] However, most of the courts which have adopted the *Renville* analysis have done so merely by citation of that case and the *Iron Shell* test without any analysis as to the application of that test to this situation.[11]

---

[10] See *Minnesota v Bellotti*, 383 NW2d 308, 312 (Minn App, 1986) ("statements regarding who caused injuries generally are not admissible because they are irrelevant to medical diagnosis and treatment"); *State v Nelson*, 138 Wis 2d 418, 432; 406 NW2d 385 (1987) (applied *Renville* in light of the fact that "there is nothing in the record to indicate the [complainant's] motive in making the statements to [the psychologists] was other than as a patient seeking treatment"); *Sluka v Alaska*, 717 P2d 394, 399, n 3 (Alas App, 1986) (refused to apply *Renville* because the complainant had not testified nor been certified as unavailable and because there was nothing in the record to indicate that the complainant knew or understood that her statements identifying the defendant were important to her treatment); *State v Mueller*, 344 NW2d 262, 265 (Iowa App, 1983) (statement made to psychologist identifying the defendant as the assailant was inadmissible under hearsay exception where the young age of the child and the failure of its mother to assure reliable responses rendered the statements insufficiently reliable); *State v Stafford*, 317 NC 568; 346 SE2d 463 (1986) (statement identifying the assailant was inadmissible where made to a pediatrician only three days prior to trial and for purpose of preparing the state's case); *State v Aguallo*, 318 NC 590, 600; 350 SE2d 76 (1986) (Billings, C.J., dissenting, stated, "The visit to the physician's office was prompted not by the child's seeking either physical or psychological help necessitated by an act that occurred seven months earlier, but by adults' reaction to information that a criminal act had taken place").

[11] The trial court in this case relied upon *People v Wilkins*, 134 Mich App 39; 349 NW2d 815 (1984), in admitting the testimony. While this decision preceded *Renville*, it provided essentially the same analysis and relied upon *Iron Shell*. *In re Freiburger*, 153 Mich App

The outcome of a child sexual abuse case is often decided by a credibility contest. The narrow and specific wording of MRE 803(4) represents an effort to balance the desire for additional evidence with the need to protect the accused from damaging hearsay. If indeed that balance needs to be shifted to allow nonmedical testimony describing statements of specific fault made after police investigations have begun, then it can best be done by amendment of the current rule.[12] Through the amendment process, expert advice on various types of therapy and the reliability of statements made in the course of such therapies can be obtained and evaluated.

Thus, after a review of MRE 803(4), the facts of this case, and the *Renville* analysis, we are not satisfied that the hearsay testimony was of the type which MRE 803(4) was designed to admit. We therefore reverse defendant's conviction and remand the case for a new trial in which this evidence shall not be admitted.

RILEY, C.J., and GRIFFIN, J., concurred with BRICKLEY, J.

LEVIN and CAVANAGH, JJ. We concur in part III.

ARCHER, J. (*concurring in part and dissenting in part*). Defendant, Daniel James LaLone, was convicted of first-degree criminal sexual conduct, MCL

---

251; 395 NW2d 300 (1986), followed *Wilkins,* as did *In re Rinesmith,* 144 Mich App 475; 376 NW2d 139 (1985), although the latter involved a far more spontaneous type of statement by the victim. Other Court of Appeals opinions have cited *Wilkins,* but those cases did not involve statements identifying the defendant as the guilty party, e.g., *People v Skinner,* 153 Mich App 815; 396 NW2d 548 (1986); *People v Zysk,* 149 Mich App 452; 386 NW2d 213 (1986); *People v Creith,* 151 Mich App 217, 226-227; 390 NW2d 234 (1986).

[12] We note that unlike the federal evidence rules, the Michigan hearsay exception does not provide a catchall exception.

750.520b(1)(b); MSA 28.788(2)(1)(b), following a jury trial in the Clinton Circuit Court. The Honorable Randy L. Tahvonen sentenced defendant to a term of fifteen to thirty years. The Court of Appeals affirmed defendant's conviction and sentence. This Court granted defendant leave to appeal to consider: (1) whether the trial court's exclusion under the Michigan rape-shield statute, MCL 750.520j(1); MSA 28.788(10)(1),[1] and MRE 404(a)(3)[2] of the complainant's sexual history with third parties violated the defendant's Sixth Amendment right of confrontation, (2) whether MRE 404(a)(3) supersedes the Michigan rape-shield statute, and (3) whether the trial court properly admitted a psychologist's testimony recounting the complainant's allegations of sexual abuse under MRE 803(4),[3] the

---

[1] MCL 750.520j(1); MSA 28.788(10)(1) provides:

   (1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:
   (a) Evidence of the victim's past sexual conduct with the actor.
   (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

[2] MRE 404(a)(3) provides:

   Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except: . . . (3) *Character of a victim of a sexual conduct crime.* In a prosecution for criminal sexual conduct, evidence of the victim's past sexual conduct with the defendant and evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

[3] MRE 803(4) provides:

medical diagnosis and treatment exception to the hearsay rules.

I would hold under the facts in this case that (1) the defendant's inability to cross-examine the complainant concerning her alleged sexual behavior with third parties, for the purpose of showing bias and a motive to fabricate, did not violate the defendant's rights of confrontation and effective cross-examination under US Const, Am VI, (2) the Michigan rape-shield statute, MCL 750.520j(1); MSA 28.788(10)(1), is superseded by MRE 404(a)(3) pursuant to this Court's rule-making authority under Const 1963, art 6, § 5, and (3) the psychologist's hearsay testimony was properly admitted under MRE 803(4). Accordingly, the decision of the Court of Appeals is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged on January 4, 1984, with one count of first-degree criminal sexual assault against the complainant, his then fourteen-year-old stepdaughter. The defendant denied the allegation of sexual misconduct and maintained that the complainant had fabricated the assault charge as a means to leave the family home and in retaliation for his punishment of her sexual behavior.

On October 22, 1984, the trial court conducted a motion in limine to consider the admissibility of the complainant's alleged sexual history. The defendant testified that the assault charge stemmed from his punishment of three alleged incidents of

---

Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment.

sexual conduct by the complainant: (1) In the summer of 1983, the complainant and defendant's natural daughter allegedly made sexually explicit telephone calls to several neighborhood youths asking if they wanted "blow jobs" and whether they used "rubbers." The defendant stated that he slapped the complainant and his own daughter in the face and ordered that both were to be grounded. (2) In the summer of 1984, defendant alleged he discovered the complainant, partially clad, in the family barn with a juvenile identified only as "George."[4] After the complainant was ordered into the house, a heated family argument ensued at which time the complainant purportedly told the defendant to "get fucked" and that it was her business whether she wanted to "get laid." (3) During the course of this argument, defendant further asserted he learned that earlier that same summer, the complainant's nine-year-old cousin discovered her and a juvenile named "DJ" in the complainant's bedroom. Both were allegedly found nude from the waist down with "DJ" kissing the complainant while lying on top of her.[5] Defendant stated he again grounded the complainant and that he and his wife decided to consult their case worker for advice on how to best address the complainant's sexual behavior.

---

[4] "George" did not testify at either the motion in limine or trial.

[5] The Court of Appeals found this latter incident irrelevant to the complainant's alleged motive to fabricate the assault charge because the complainant's nine-year-old cousin testified that she did not tell anyone about the incident until *after* the complainant was placed in foster care in September, 1983. See *People v LaLone,* unpublished opinion per curiam of the Court of Appeals, decided June 12, 1986 (Docket No. 84966), p 4. However, upon review of defendant's testimony at the motion in limine, it is clear that the defendant testified that his daughter, Cathy, revealed the complainant's activity with "DJ" during the family argument over the defendant's alleged discovery of the complainant with "George." Although Cathy did not testify, it is at least possible she was aware of the incident with "DJ," inasmuch as the cousin also testified that she remained silent for fear that Cathy and the complainant would "beat her up."

The complainant testified to a pattern of sexual abuse by the defendant from 1979 to 1983, consisting of his fondling of her breasts and genitals on several occasions and three instances of sexual intercourse in 1981 and 1983. She denied having made obscene phone calls and asserted that she and her stepsister made bogus pizza orders for delivery to several neighbors. However, she admitted that defendant had slapped her on one occasion and that she was to be grounded up to a year for the telephone calls.[6] The complainant further denied the alleged barn incident with "George" and her asserted use of obscene language toward the defendant. However, she admitted a young cousin discovered her and "DJ" kissing while both were partially nude.[7]

At the close of testimony, Judge Tahvonen denied defendant's motion to introduce the complainant's alleged sexual history as a basis to prove her bias and motive to fabricate the assault charge. The trial court concluded that the motivation for defendant's punishment of the complainant was collateral to the fact of punishment and the complainant's apparent hostility towards the defendant.

Defendant's first trial ended in mistrial.[8] Prior to defendant's second trial, Judge Tahvonen conducted a hearing on a second motion in limine on the prosecution's motion to introduce the testi-

[6] The complainant also asserted defendant falsely accused her of calling an unidentified thirty-five-year-old man. Neither the defense nor the prosecution inquired into either the nature of these calls or if the defendant punished the complainant on that account.

[7] "DJ" also testified and concurred with complainant's version of the incident.

[8] The trial court granted defendant's motion for mistrial after the prosecution elicited from a witness that the defendant fathered a child during an extramarital affair. See *People v Bouchee*, 400 Mich 253; 253 NW2d 626 (1977).

mony of licensed psychologist, Dr. Joan Jackson Johnson. Dr. Johnson treated the complainant in the latter part of September, 1983. Dr. Johnson's proffered testimony corroborated the complainant's statements regarding the defendant's alleged long-term sexual abuse. The defendant argued that as the complainant's statements were not made to a physician, they lacked the presumption of reliability sufficient to satisfy the medical diagnosis and treatment hearsay exception, MRE 803(4). The defendant also asserted complainant's identification of the defendant as her assailant was not reasonably necessary to treatment and diagnosis. In reliance upon the Court of Appeals decision in *People v Wilkins,* 134 Mich App 39; 349 NW2d 815 (1984), lv den 422 Mich 826 (1985), the trial court disagreed, concluding MRE 803(4) extended to testimony by a psychologist and further that the complainant's statements to Dr. Johnson were reasonably necessary to diagnosis and treatment.

Defendant's second trial was conducted on February 26-28, 1985, at which the defendant did not testify. The jury convicted defendant on one charge of first-degree criminal sexual assault. Defendant appealed in the Court of Appeals. A unanimous panel affirmed defendant's conviction, finding the trial court's exclusion of the complainant's alleged sexual history was neither an abuse of discretion nor had it abridged the defendant's Sixth Amendment right of confrontation.[9] The panel also affirmed the admission of the psychologist's testimony under MRE 803(4).[10] We granted defendant leave to appeal. 428 Mich 885 (1987).

I

Defendant argues at the outset that the exclu-

[9] *People v LaLone, supra* at 7.
[10] *Id.* at 9.

sion under the rape-shield statute of specific instances in the complainant's sexual history violated his Sixth Amendment right to confrontation.[11] However, prior to a consideration of the merits of defendant's constitutional argument, I turn first to the genesis of the rape-shield statute.

A

Prior to the passage of rape-shield laws, opinion and reputation evidence of a victim's consensual sexual activity had long been deemed probative of the likelihood of a woman's consent with a defendant and her credibility for truthfulness.[12] In Michigan, the evidence of a victim's sexual history was limited solely by judicial discretion and the defendant's introduction of evidence in apparent good faith.[13] *People v Cutler,* 197 Mich 6; 163 NW 493 (1917).

The routine admission of a victim's sexual history in rape prosecutions discouraged countless victims from seeking prosecution. Further, the evidence served to shift a trial's emphasis away from the defendant's guilt or innocence, to a determination of whether a woman's sexual decisions lent an air of suspicion to her assertions or were probative of the possibility of consent with the

---

[11] Sixth Amendment guarantees are applicable to the states through the Fourteenth Amendment Due Process Clause. *Pointer v Texas,* 380 US 400; 85 S Ct 1065; 13 L Ed 2d 923 (1965).

[12] See McCormick, Evidence (3d ed), § 193, p 573; 1A Wigmore, Evidence (Tillers rev), § 62, pp 1260-1312, § 62.1, pp 1312-1334; 2 Weinstein & Berger, Evidence, ¶ 412[01], pp 412-10, 412-11. In addition, a woman could be cross-examined concerning specific instances of sexual activity; however, she could not be extrinsically impeached on that basis. *Strang v People,* 24 Mich 1; 2 Browns 127 (1871).

[13] Michigan did not limit the cross-examination of female witnesses on the issue of chastity to prosecutions for rape. See, e.g., *People v Cutler, supra* (murder); *People v Harrison,* 93 Mich 594; 53 NW 725 (1892) (larceny); *People v Whitson,* 43 Mich 419; 5 NW 454 (1880) (assault with intent to kill).

defendant.[14] The evolution of societal attitudes deeming sexuality as distinct from crimes of sexual violence fostered dissatisfaction with archaic evidentiary rules which freely accorded a woman's sexual decisions relevancy within a prosecution for rape.[15] In response to mounting criticism, the

[14] The examination of a woman's sexual past was often justified by the widely held perception on the part of the bench and bar that rape, unlike other crimes, was peculiarly susceptible to fabrication. See, e.g., 23 Wright & Graham, Federal Practice & Procedure, § 5382, pp 527-530; Berger, *Man's trial, woman's tribulation: Rape cases in the courtroom,* 77 Colum L R 1, 22 (1977):

> Sir Matthew Hale advanced the notion that rape is a charge "easily to be made and hard to be proved, and harder to be defended by the party accused, tho never so innocent." This quotation, now a cliche, serves as introduction and premise for myriad discussions of the law of rape. Hale himself grounded the alleged extreme danger of unjust verdicts on the "heinousness of the offense," which many times transports "the judge and jury with so much indignation, that they are overhastily carried to the conviction of the person accused." Some have stressed the private nature of the crime, which pits the complainant head to head against the accused in a swearing contest, while others fear that the more deranged the complainant witness, the more plausible will be her tale, as she spins elaborate and colorful details into a web of dream and distortion.

[15] See Nordby, *Legal effects of proposed rape reform bills,* SB 1207, HB 5802, p 14 (1974) (unpublished manuscript).

> In 1974, it is hard for women to accept the burden of a judgment made by male jurists 50 or 100 years ago. Certainly today no woman would agree that there is any logical relationship between her having consented to sexual relationships with one man in the past and her likelihood of consenting to another man in the future. Even the judicial presumption that a virgin will fight harder than an unchaste woman if she is truly "nonconsenting," would not find general support today. Therefore, the proposed reform would eliminate evidence of prior consensual sexual activity in light of its very dubious probative value on the issue of consent, and in light of its highly prejudicial effect on the prosecution's case, and in light of the fact that permitting it is the principal inhibiting factor in the enforcement of the rape law.

> The House Judiciary Committee received this analysis on April 23, 1974. However, we do not consider this to be legisla-

Michigan Legislature in 1974 enacted sweeping statutory reforms of the rape laws. In addition to redefining the crime of "rape" into the more expansive and gender-neutral concept of criminal sexual conduct, the Legislature also tailored the evidentiary considerations in sexual-assault prosecutions to focus upon the merits of the accused's guilt or innocence rather than the victim's sexual behavior.[16]

The Michigan rape-shield statute reflects the Legislature's determination that in the overwhelming majority of prosecutions, the introduction of the complainant's sexual conduct with parties other than the defendant is neither an accurate measure of the complainant's veracity nor determinative of the likelihood of consensual sexual relations with the defendant.[17] *People v Arenda,* 416 Mich 1; 330 NW2d 814 (1982); *People v Hackett,* 421 Mich 338; 365 NW2d 120 (1984); *People v Khan,* 80 Mich App 605; 264 NW2d 360 (1978).

---

tive history since the extent of this document's distribution is uncertain. [*People v Nelson,* 79 Mich App 303, 321, n 36; 261 NW2d 299 (1977).]

[16] In addition to the rape-shield provision, the Legislature also found that a complainant's testimony need no longer be corroborated, MCL 750.520h; MSA 28.788(8); nor must a victim prove having resisted the actor. MCL 750.520i; MSA 28.788(9).

[17] The provision is also indicative of the Legislature's mistrust of broad judicial discretion in the area of criminal sexual conduct prosecutions. As originally introduced, SB 1207 provided:

The fact that prior sexual activity has taken place between the victim and any person other than the actor shall not be admitted into evidence in prosecutions . . . unless and only to the extent it is clearly relevant to the matters at issue. [1974 Journal of the Senate 965.]

Senate Bill 1207 was rejected in favor of the more restrictive House amendment, HB 5802, the current rape-shield statute, which restricts the admission of a victim's prior sexual activity to instances enumerated within the statute *and* whose probative value outweighs its prejudicial effect.

However, the statute's virtual exclusion of evidence of the complainant's sexual behavior prompted commentators and defendants alike to question whether the statute struck the appropriate balance between evidentiary reform and the accused's right of confrontation and cross-examination.[18]

In *People v Arenda, supra* at 11, this Court upheld the facial constitutionality of the rape-shield law, concluding that the "minimal relevance of such evidence in most cases, the prohibitions do not deny or significantly diminish defendant's right of confrontation." Although in *Arenda* we acknowledged the legitimacy of the state interest reflected in the rape-shield statute, in the face of a constitutional challenge premised upon the fundamental right of confrontation, evidentiary rules and policy are secondary to the protection of individual freedoms. *Rock v Arkansas,* 483 US 44; 107 S Ct 2704; 97 L Ed 2d 37 (1987). Thus, in *People v Hackett, supra,* we concluded that the exclusion of evidence outside the exceptions stated under the rape-shield statute may violate the Sixth Amendment with regard to an individual defendant.[19]

We recognize that in certain limited situations, such evidence may not only be relevant, but its

---

[18] See Westen, *Compulsory process II,* 74 Mich L R 192, 205-213 (1975); note, *Constitutional restraints on the exclusion of evidence in the defendant's favor: The implications of* Davis v Alaska, 73 Mich L R 1465, 1489, n 110 (1975). *People v Patterson,* 79 Mich App 393; 262 NW2d 835 (1977); *People v Dawsey,* 76 Mich App 741; 257 NW2d 236 (1977).

[19] For similar results reached by jurisdictions with rape-shield provisions similar to Michigan, see *Commonwealth v Black,* 337 Pa Super 548; 487 A2d 396 (1985); *Commonwealth v Joyce,* 382 Mass 222; 415 NE2d 181 (1981); *State v Howard,* 121 NH 53; 426 A2d 457 (1981); *State v Jalo,* 27 Or App 845; 557 P2d 1359 (1976); *State v Vonesh,* 135 Wis 2d 477; 401 NW2d 170 (1986) (Gartzke, P.J., concurring); *Woods v State,* 657 P2d 180 (Okla Crim App, 1983).

admission may be required to preserve a defendant's constitutional right to confrontation. For example, where the defendant proffers evidence of a complainant's prior sexual conduct for the narrow purpose of showing the complaining witness' bias, this would almost always be material and should be admitted. Moreover in certain circumstances, evidence of a complainant's sexual conduct may also be probative of a complainant's ulterior motive for making a false charge. [*Id.* at 348. Citations omitted.]

Clearly, the defendant's proffered evidence does not fall within the exceptions enumerated in the rape-shield statute.[20] Thus, our task is to determine whether the instant defendant's inability to introduce the complainant's sexual behavior under the rape-shield law is unconstitutional.

B

The Sixth Amendment right of confrontation rests upon an accused's ability to cross-examine a particular witness in a fashion which effects an accurate perception of the witness by the trier of fact. In *Delaware v Van Arsdall*, 475 US 673, 680; 106 S Ct 1431; 89 L Ed 2d 674 (1986), the Court observed:

[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby "to expose to the jury the facts from which jurors . . . could appropriately draw infer-

[20] Cf. 3A Md Ann Code, art 27, § 461A(a)(3); 4 Va Code Ann, § 18.2-67.7(B); Or Rev Stat, 40.210, Or Evid Code, R 412(2)(a), which statutorily admit relevant evidence of the complainant's sexual history for purposes of bias or motive to fabricate.

ences relating to the reliability of the witness."
[Citations omitted.]

As the Confrontation Clause's inquiry is directed
toward an individual defendant's right to cross-
examine each witness, the critical relationship
between the effective exercise of a defendant's
Sixth Amendment right of confrontation and the
determination of a witness' hidden animosity or
prejudice has long been recognized. See *Alford v
United States,* 282 US 687; 51 S Ct 218; 75 L Ed
624 (1931).

However, while the discovery of any witness'
bias is unquestionably relevant, the Sixth Amend-
ment does not prohibit a trial court from limiting
the means by which a witness' bias is determined
on cross-examination:

> "[T]he Confrontation Clause guarantees an *op-
> portunity* for effective cross-examination, not cross-
> examination that is effective in whatever way, and
> to whatever extent, the defense might wish." [*Van
> Arsdall, supra,* 475 US 679.]

To determine whether the instant defendant was
denied the opportunity for effective cross-examina-
tion, our inquiry is twofold. First, the exclusion of
evidence proffered for the purpose of showing a
witness' bias or motive to fabricate must rise to
the level of constitutional error. Second, if consti-
tutional error is in fact present, that error must be
proved not to be harmless beyond a reasonable
doubt. *Id.* at 683-686.

In *Delaware v Van Arsdall, supra* at 680, the
Court determined that constitutional error is pres-
ent where the accused is foreclosed from establish-
ing a witness' bias or motive to fabricate on cross-
examination:

We think that a criminal defendant states a
violation of the Confrontation Clause by showing
that he was prohibited from engaging in otherwise
appropriate cross-examination designed to show a
prototypical form of bias on the part of the wit-
ness, and thereby "to expose to the jury the facts
from which jurors . . . could appropriately draw
inferences relating to the reliability of the wit-
ness." [Citations omitted.]

In the instant case, it is plausible that a reason-
able trier of fact might have inferred that the
defendant's punishment of the complainant's al-
leged sexual behavior would, in turn, cause an
angry adolescent to lodge false charges of a sexual
nature.[21] However, as the trial court did not pre-
clude the defendant from introducing significant
nonsexual evidence from which the complainant's
bias could be inferred, I conclude that the exclu-
sion of her sexual history is not constitutional
error violative of the defendant's Sixth Amend-
ment rights.

The defendant argues that the United States
Supreme Court decision in *Davis v Alaska,* 415 US
308, 318; 94 S Ct 1105; 39 L Ed 2d 347 (1974), is
controlling here. In *Davis,* an Alaska statute pro-
hibited the introduction of a witness' juvenile
criminal record for all purposes other than a
juvenile adjudication. The witness, Green, identi-
fied the defendant Davis as having discarded sto-
len property near his residence. Davis sought to
cross-examine Green on his probationary status for

---

[21] McCormick, Evidence (3d ed), § 185, p 542.

A fact that is "of consequence" is material, and evidence that
affects the probability that a fact is as a party claims it to be
has probative force. Evidence that is probative often is said to
have "logical relevance," while evidence lacking in probative
value may be condemned as "remote" or "speculative."

several theft crimes both at the time of the identification and at trial, to imply his bias and susceptibility to police efforts to quickly identify any suspect so as to remove suspicion from himself. Although the trial court allowed inquiry into whether Green felt anxious or uncomfortable about the discovery of stolen property near his residence, it prohibited questioning regarding why Green may have been concerned over the authority's reaction. Davis alleged that his inability to reveal Green's juvenile criminal record as a probable basis for his bias and misidentification violated his right to confrontation and meaningful cross-examination. The United States Supreme Court agreed, finding that Davis' complete inability to place Green's alleged bias in its factual context relegated the defendant to engage in a seemingly baseless line of cross-examination. *Id.* at 318.

The defendant asserts that, as in *Davis,* his inability to introduce the complainant's alleged sexual behavior similarly precluded him from placing before the jury the complainant's bias within its crucial factual context. I disagree. Unlike the defendant in *Davis,* the trial court's exclusion of the complainant's sexual history left the defendant with several avenues to explore the complainant's bias or motive to fabricate. Upon review of the trial transcript containing defendant's cross-examination of the complainant, it is clear she testified that the defendant had falsely accused her of theft, had slapped her face, and that the two had argued, with the complainant stating she wished to leave the family home. In addition, the complainant also testified that she viewed the defendant as a strict disciplinarian against whom she bore obvious hostility. Further, the complainant stated she had trouble with her parents because of boyfriends and her apparent failure to abide by

family discipline. Defense counsel also questioned the complainant on her abilities as a creative writer in an apparent attempt to portray the complainant as a young adult adept in manufacturing fiction.

Thus, on the basis of the defendant's cross-examination of the complainant, it is clear the defendant was able to introduce compelling nonsexual evidence of the complainant's bias and motive to fabricate. Therefore, the exclusion of evidence regarding her sexual behavior does not rise to the level of constitutional error.[22]

However, even if the defendant's inability to cross-examine the complainant's sexual history were an error of constitutional magnitude, I nonetheless find that its exclusion and its effect upon the verdict obtained is an error harmless beyond a reasonable doubt. It is well settled that all constitutional errors do not merit automatic reversal where they constitute error harmless beyond a reasonable doubt. *Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967). In *Van Arsdall, supra* at 684, the Court addressed the relationship between the harmless-error standard and a defendant's allegation of a Sixth Amendment confrontation violation:

> [W]e hold that the constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to *Chapman* harmless-error analysis. The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might none-

---

[22] Accord *Commonwealth v Domaingue,* 397 Mass 693; 493 NE2d 841 (1986); *Commonwealth v Elder,* 389 Mass 743; 452 NE2d 1104 (1983); *Commonwealth v Frey,* 390 Mass 245; 454 NE2d 478 (1983); *Floyd v State,* 503 So 2d 956 (Fla App, 1987); *Marr v State,* 494 So 2d 1139 (Fla, 1986).

theless say that the error was harmless beyond a reasonable doubt. *Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.* [Emphasis added.]

Applying the factors identified above, I note initially that the significance of complainant's testimony to the people's case is readily apparent. Here, as in most criminal sexual assault prosecutions, there were no witnesses to the defendant's alleged sexual abuse.[23] Nor was there any physical evidence such as blood or semen tending to identify the defendant as the complainant's assailant. Thus, the complainant's credibility was essential to the trier of fact's eventual verdict. Further, although it is no longer required by statute,[24] the complainant's statements regarding the alleged sexual abuse were corroborated by her treating psychologist, Dr. Joan Jackson Johnson.

By contrast, on cross-examination counsel questioned the complainant and other prosecution witnesses thoroughly on the circumstances of the alleged sexual assaults, her long-term silence con-

---

[23] The complainant testified the assaults occurred while one or more family members were present in the family home. Although none of the immediate family witnessed the alleged assaults, the complainant's natural sister testified to the complainant spending ten to fifteen minutes alone in the defendant's bedroom in August, 1983, after the defendant requested a glass of water. Also, another of the complainant's older sisters testified to her unexplained moodiness on a date in July, 1983, when the defendant allegedly engaged in intercourse with the complainant.

[24] See n 16.

cerning the defendant's actions, her alleged attempt to have a younger brother accuse the defendant of physical abuse, and the absence of health problems given the young age (eleven) at which the defendant allegedly began engaging in sexual intercourse with the complainant.

Therefore, even if the exclusion of the complainant's sexual history were constitutional error, in light of the above matters brought out on cross-examination, I conclude the error was harmless beyond a reasonable doubt.[25]

I emphasize, however, that this holding would not preclude a future defendant from establishing a constitutional error requiring reversal, where the defendant is barred from introducing a complainant's sexual history for the purpose of inferring bias or motive for fabrication.[26]

C

Defendant also argues that the exclusion of the

[25] The complainant's alleged sexually explicit telephone calls arguably falls outside the scope of the rape-shield statute. The provision does not define prior sexual conduct. However, in *People v Paquette,* the companion case to *People v Hackett,* this Court noted that the complainant's statement of sexual dissatisfaction with her spouse *did* not fall under the rape-shield statute. 421 Mich 356. See also *Snider v State,* 274 Ind 401; 412 NE2d 230 (1980) (complainant's statement betting she could take the defendant to bed was found to be outside the Indiana rape-shield statute); *State v Vonesh,* n 19 *supra* at 481-482 (complainant's letter to the defendant, stating, "I wanted you to fuck me," was found to constitute sexual desires rather than prior sexual conduct under the Wisconsin rape-shield law).

The defendant argues, and I agree, that the rape-shield statute was designed to exclude the introduction of the complainant's consensual sexual activity with third parties. However, even though the evidence was erroneously considered under the rape-shield statute, I find the trial court's conclusion of the evidence's irrelevance did not violate the defendant's Sixth Amendment rights as defined in *Van Arsdall, supra.*

[26] For an example of the exclusion of a complainant's sexual history posing an unconstitutional interference with a defendant's ability to infer bias or motive to fabricate, see *Olden v Kentucky,* 488 US —; 109 S Ct 480; 102 L Ed 2d 513 (1988).

complainant's sexual history under MRE 404(a)(3) similarly violated his Sixth Amendment right of confrontation. I disagree. In the committee comment to the evidentiary rule, it is clear that the commentators were aware of the potential unconstitutional application of the Michigan rape-shield statute:

> In adopting Rule 404(a)(3) the Committee was aware that questions have been raised regarding the constitutionality of MCL 750.520j [MSA 28.788(10)], at least as it might be applied in certain cases. . . . The adoption of MRE 404(a)(3) does not resolve the question of whether, in a proper case charging criminal sexual conduct, exclusion of evidence of the victim's character would violate federal or state constitutional provisions. [Michigan Court Rules Annotated, Evidence Rules (West, 1979), p 182.]

However, for the reasons stated in part I-B, I conclude that the exclusion of defendant's proffered evidence under MRE 404(a)(3) did not violate the defendant's Sixth Amendment right of confrontation.

II

Second, I consider the Michigan rape-shield statute's continued validity since the passage of MRE 404(a)(3) and whether the evidentiary provision should in fact supersede the legislative exclusionary rule.[27]

Article 6, § 5 of the Michigan Constitution of 1963 grants this Court the power to establish and

[27] For the text of MRE 404(a)(3), see n 2.

amend rules of procedure.[28] This constitutional provision enables this Court to stand as the final arbiter of the rules of practice and procedure.[29] While the Legislature remains free to amend common-law rules of procedure, it is well settled that where any rule of practice set forth by statute by the Legislature stands in conflict with a rule of practice adopted by this Court, the former shall be deemed in effect only so long as judicial deference by this Court so allows. *People v Stanley,* 344 Mich 530; 75 NW2d 39 (1956); MCR 1.104.

In *Perin v Peuler (On Rehearing),* 373 Mich 531, 541-542; 130 NW2d 4 (1964), the Court concluded that its inherent constitutional authority with regard to practice and procedure extended to rules of evidence:

> [W]e advert to what was said above—that the rules of practice and procedure include the rules of evidence:
> "The judicial function constitutionally empowers

[28] Article 6, § 5 provides:

The supreme court shall by general rules establish, modify, amend and simplify the practice and procedure in all courts of this state. The distinctions between law and equity proceedings shall, as far as practicable, be abolished. The office of master in chancery is prohibited.

This language has remained relatively unchanged. See Const 1908, art 7, § 5 and Const 1850, art 6, § 5.

[29] The delegates to the 1963 Constitutional Convention rejected an amendment by delegate Hannah which would have granted the Legislature the final authority with regard to practice and procedure enacted by this Court:

The supreme court shall by general rules establish, modify, amend and simplify the practice and procedure in all courts of this state. . . . *"Provided, however, That the Legislature may suspend or amend any rule by a ⅔ vote of each house of the legislature."* [2 Official Record, Constitutional Convention 1961, pp 2722, 2735. Emphasis added.]

The amendment was defeated by a vote of 80 to 40.

the courts to make their own rules of procedure, including rules of evidence (subject only to specific constitutional limitations). . . . That this prerogative of the courts includes the power to formulate and to alter the rules of evidence ought not to be doubted."

The Michigan rape-shield statute, like any other evidentiary provision enacted by the Legislature, remains in effect unless it is shown to be superseded by court rule promulgated by this Court.[30] *People v Denmark,* 74 Mich App 402, 410; 254 NW2d 61 (1977); MRE 101. I must now decide whether the Michigan rape-shield statute and its counterpart, MRE 404(a)(3), should continue to coexist or if the evidentiary rule should supersede the rape-shield statute and solely control the admission of a complainant's sexual history in criminal sexual conduct prosecutions.[31]

In *Buscaino v Rhodes,* 385 Mich 474, 481; 189

---

[30] The delegates to the Michigan Constitutional Convention of 1961 reached a similar conclusion. Delegates Donnelly, Leibrand, and McAllister proposed to amend art 6, § 5 to provide that in the event of a conflict between an evidentiary rule enacted by this Court and a similar provision by the Legislature that the latter would prevail. The proposed amendment stated:

> The supreme court shall by general rules establish, modify, amend and simplify the practice and procedure in all courts in the state, *it being provided that where there is a conflict between supreme court rule and a statute concerning evidence or substantive law the statute shall prevail.* [1 Official Record, Constitutional Convention 1961, p 1289.]

This amendment was defeated by a vote of 75 to 32.

[31] Although the Michigan Rules of Evidence are generally patterned upon their federal counterparts, the committee comment to proposed MRE 404(a)(3) notes that this provision embodies the general policy found within the Michigan rape-shield statute. *In re Proposed Michigan Rules of Evidence,* 399 Mich 899, 972 (1977). While the rule shares the general purpose of the Michigan rape-shield statute, the committee was silent upon whether it intended for the provision to control in the prosecutions for criminal sexual assault. However, the commentators did note that the notice provision of the rape-shield statute, MCL 750.520j(2); MSA 28.788(10)(2), was *not* superseded. *Id.*

NW2d 202 (1971), the Court employed a two-step procedure in resolving an apparent conflict between an evidentiary rule and a legislative provision: (1) each provision must be read according to its plain language, and (2) the common-sense meaning of the words should be given the effect most likely understood by those who adopted them. In the event the provisions conflict, the evidentiary rule is given precedence. *Id.*

Initially, the conflict between the Michigan rape-shield statute and MRE 404(a)(3) is readily apparent. The plain language of the Michigan rape-shield statute excludes all evidence of a complainant's sexual history regardless of the purpose for which it is introduced unless it falls within an exception enumerated under the statute and is found to be more probative than prejudicial. By contrast, MRE 404(a)(3) restricts the use of past sexual conduct as character evidence *only* where it is introduced for the purpose of showing that the complainant acted in conformity on a particular occasion.

Second, in giving effect to the common-sense meaning of each provision, the evidentiary rule clearly embodies the same determination made by the Michigan Legislature that a victim's sexual history is generally not probative of consent or veracity. However, the rule does not exclude such evidence when it is offered for a purpose *other* than showing that the victim acted in conformity with an alleged character trait for promiscuity at the time of the incident alleged against the defendant. Thus, in the instant case, while the statute barred the defendant's introduction of the complainant's sexual history for purposes of showing a bias or motive to fabricate, the evidentiary rule provides an avenue to introduce noncharacter evi-

dence so long as it is found to be more probative than prejudicial.

Thus, it is evident that the two provisions are not redundant, but rather reflect two different approaches in addressing the delicate balance between a victim's privacy and a defendant's right to confrontation. Inasmuch as the two provisions stand at odds with each other, I conclude that the evidentiary rule must be found to supersede the Michigan rape-shield statute.[32]

> Rape shield laws are a legislative response, and hence a response of the political process, to the failure of courts throughout the land to correct an imbalance in the rules of evidence which made it difficult to prosecute the crime of rape. In now responding to this imbalance, this Court need not accept the legislative judgment. This Court is obliged to formulate reasonable rules of evidence that promote the truth-seeking process, are fair to both the defendant and the prosecution, and safeguard against abuse of complainants and other witnesses. [*People v Williams,* 416 Mich 25, 50, n 5; 330 NW2d 823 (1982) (Levin, J., concurring).]

Thus, I conclude that MCL 750.520j(1); MSA 28.788(10)(1), is superseded by MRE 404(a)(3). The evidentiary rule is henceforth controlling in all subsequent prosecutions for criminal sexual assault. Accord *People v Hackett,* 421 Mich 361-364, *supra* (Kavanagh, J., concurring).

### III

Finally, the defendant argues that the admission of the complainant's statements to her psychologist, Dr. Joan Jackson Johnson, were improperly

---

[32] I emphasize here that the trial court should be diligent in applying limiting instructions to the jury, on the use of this evidence to ensure that a complainant's sexual history is not used for purposes of weighing the victim's character.

admitted under MRE 803(4), the medical diagnosis
and treatment exception to the hearsay rules.[33] Dr.
Johnson had treated the complainant previously at
the request of her parents.[34] However, in Septem-
ber, 1983, she asserted that the complainant's
stepsister informed her that the complainant
needed to see her to discuss family problems. After
the complainant was placed in foster care at the
end of September, the Department of Social Ser-
vices requested Dr. Johnson to examine and evalu-
ate the complainant.[35] At trial, Dr. Johnson corrob-
orated the complainant's account of an instance of
sexual intercourse with the defendant in August,
1983.[36]

[33] See n 3 for text. MRE 803(4) is modeled on its counterpart under
the Federal Rules of Evidence. While it is, for the most part, identical
to FRE 803(4), Michigan's version of this exception does not allow
statements made solely for purposes of diagnosis to be admitted under
this exception.

[34] It was established at the motion in limine that Dr. Johnson held
a Ph.D. and had been practicing as a full-time licensed psychologist
for at least four years prior to trial as a specialist in diagnostic
treatment and rehabilitative psychotherapy of children and adults.

[35] The defendant asserts that Dr. Johnson treated the complainant
at the request of the Clinton Probate Court, presumably as a means
to substantiate the complainant's charges against the defendant.
Upon review of the complainant's probate court records, we can find
no indication that the probate court ordered an evaluation of the
complainant in September, 1983. Further, Dr. Johnson testified that
she was assigned to evaluate the complainant by the Department of
Social Services in light of her past treatment of the complainant and
solely for purposes of diagnosis and evaluation. Compare, *State v
Hebert,* 480 A2d 742, 748-749 (Me, 1984) (a physician's testimony of a
minor complainant's statements of sexual activity with an adult made
during a medical examination were found not to be inherently un-
trustworthy under Maine Rule of Evidence 803(4), merely because the
declarant may have been aware of criminal proceedings against the
defendant or because the medical examination was potentially helpful
to the state's case).

[36] Dr. Johnson's trial testimony essentially recounts the complain-
ant's direct examination testimony of an instance of sexual assault
which purportedly occurred in the defendant's bedroom while other
family members were located in adjoining areas of the home. The
prosecution unquestionably offered Dr. Johnson's statements for cor-
roborative purposes after defense counsel's efforts on complainant's
cross-examination and direct examination of the complainant's natu-
ral sister who was present in the home at the time of the alleged

.

The defendant argues that the medical diagnosis and treatment exception is inapplicable here because the declarant's statements were made to a licensed psychologist rather than to a physician. I disagree.

It is well settled that the declarant's statements need not be made to a physician. The advisory committee notes to the federal counterpart of MRE 803(4) note that the exception is applicable even where the statements are made to a hospital attendant, ambulance driver, or member of the family. McCormick, Evidence (3d ed), § 293, p 840. In addition, the language of the provision focuses on the *declarant's* motivation in making the statement, rather than to *whom* the statement was made.

The defendant also asserts that the complainant's identification of the defendant as her alleged assailant is not a statement reasonably necessary to diagnosis and treatment. The rationale for this exception to the hearsay rules rests upon the assumption that information which is accurate enough to form the basis for crucial health-care decisions merit exclusion from the hearsay rule. 4 Weinstein & Berger, Evidence, ¶ 803(4)[01], p 803-144. Further, it is presumed that most people will be truthful in informing someone of the true nature of their condition in order to receive accurate treatment and evaluation. *Id.*

In *United States v Iron Shell*, 633 F2d 77 (CA 8, 1980), cert den 450 US 1001 (1981), the Eighth Circuit devised a two-part test incorporating the traditional rationales supporting FRE 803(4) to

---

assault. Specifically, defense counsel sought to establish the improbability of such an incident in light of the absence of a door on the defendant's bedroom, the proximity of other family members to the room at the time of the alleged assault, and the failure of the complainant's siblings to observe anything out of the ordinary while the complainant was in the defendant's room.

determine whether a sexual assault victim's statements were reasonably pertinent to diagnosis and treatment.[37] First, the declarant's motive in making the statement must be consistent with treatment and diagnosis. Second, it must be shown that the declarant's statements are those which would be reasonably relied upon in formulating treatment or diagnosis. *Id.* at 84.[38]

Initially, I must consider whether the complainant's motive in identifying the defendant as her assailant was reasonably necessary to treatment and diagnosis. The cause of an individual's distress has generally been excluded under this exception unless it is reasonably pertinent to the individual's

---

[37] The majority is correct that in *Iron Shell*, the victim did not relate the defendant's identity. However, the court also did not foreclose future instances when such information would in fact be admissible under 803(4):

> It is important to note that the statements concern what happened rather than who assaulted her. The former in most cases is pertinent to diagnosis and treatment while the latter would seldom, if ever, be sufficiently related.[10]

---

[10] The advisory committee notes on 803(4) provide that statements as to fault would not ordinarily qualify. The notes use this example: "a patient's statement that he was struck by an automobile would qualify but not his statement that the car was driven through a red light." Advisory Committee Notes, *supra*, at 585. Another example concludes that a statement by a patient that he was shot would be admissible but a statement that he was shot by a white man would not. . . . And the fact that a patient strained himself while operating a machine may be significant to treatment but the fact that the patient said the machine was defective may not. [633 F2d 84.]

---

In *United States v Renville*, 779 F2d 430, 436-437 (CA 8, 1985), the Eighth Circuit extended the *Iron Shell* test to a child sexual assault victim's identification of the defendant to a physician. See also *In re Dependency of Penelope B*, 104 Wash 2d 643; 709 P2d 1185 (1985), *State v Garza*, 337 NW2d 823 (SD, 1983), and *United States v Shaw*, 824 F2d 601 (CA 8, 1987), cert den 484 US 1068; 108 S Ct 1033; 98 L Ed 2d 997 (1988).

[38] See *People v Wilkins, supra*, which admitted under *Iron Shell* a sexual assault victim's identification of the defendant to a physician.

diagnosis and treatment, McCormick, Evidence, *supra* at 841. Ordinarily, I would agree that the identity of a sexual assault victim's assailant would be inadmissible under this exception. However, in instances of parental sexual abuse, the child is victimized by an adult who has exploited the normal parent-child relationship in order to obtain sexual gratification. The victim is thus torn between conflicting emotions of guilt and anger along with a continuing need for parental affection. When this additional factor is added to the devastating trauma of sexual assault, it would appear natural for the victim, once removed from the parent, to identify the source of such pain and confusion.

In the instant case, although the defendant is not the complainant's biological parent, he has been a father figure to her since the age of three. The alleged sexual abuse began at age nine. The complainant testified that the defendant allegedly told her prior to two instances of sexual intercourse that his actions were "all right because I was his stepdaughter." In addition, it is clear the complainant knew the purpose of the psychological evaluation because she had apparently requested to meet with Dr. Johnson to discuss her family's problems. Thus, I conclude that the nature of the alleged sexual abuse, the relationship between the parties, the complainant's age at the time the alleged assaults began, and her awareness of the evaluation's purpose all support the motive for the complainant's statements being reasonably necessary to diagnosis and treatment.[39]

Secondly, I conclude that the complainant's

[39] I note that on direct examination, at the motion in limine, Dr. Johnson was of the opinion that the complainant's motives in making the statements were reliable:

*Q.* In your discussions with M_____, is there anything

identification of the defendant as the perpetrator was reasonably necessary to diagnosis and treatment. Although it is apparent that the drafters of both the state and federal versions of these exceptions to the hearsay rules generally envisioned that the treatment decisions would entail physical injury, I find that the psychological scars that an individual may carry after being subjected to events as traumatic as parental sexual abuse equally demand professional assistance. In the instant case, I find that Dr. Johnson's professional qualifications enabled her to make the reasoned judgments regarding what necessitated effective treatment.[40]

---

that indicated to you that her motive in making statements to you was anything other than a person seeking treatment from you?

*A.* No.

*Q.* Do you feel that you can effectively or adequately judge her reliability on her statements?

*A.* I feel we have been able to.

*Q.* Why do you say that you can effectively judge her reliability?

*A.* Well, one of the things that we do—I mentioned that in terms of the initial diagnosis, you know, process or the initial interview is that a lot of probing is done and we have ways of trying to check that through other testing procedures that would not necessarily including [sic] interviews; so we have done some other testing that really suggests a lot of the stress and/or pressure both sexually and physically that she suggested during her initial interview with me. That is kind of a way of checking, kind of a check and balance system, and to be able to test her and check her on other areas, also.

*Q.* You have done those checking procedures with M_____?

*A.* Yes.

*Q.* You have found them not to be inconsistent with her statements?

*A.* Correct.

[40] I also note that this jurisdiction has recognized the significance of a psychologist's treatment and diagnosis with regard to evidentiary privileges. MCL 333.18237; MSA 14.15(18237) shields licensed psychologists from the disclosure of confidential information obtained during the course of a client's treatment.

In the instant case, Dr. Johnson opined at the motion in limine that the identification of the complainant's assailant was crucial to her providing effective psychological treatment:

*Q.* Was it necessary for an adequate diagnosis for you to know the source of the—the person or the perpetrator was a member of the family?

*A.* Yes.

*Q.* Why is that?

*A.* Well, at the time that I saw her at the end of September, M_____ had been removed from the home and prior to that time, I had received some information from her stepsister advising me that there was a problem and asking if I could perhaps help M_____; so, in order to get a firm picture or clear picture of what was going on, M_____ was asked the identity of the perpetrator for family dynamics and it particularly was really important because of the impact that that had on her in terms of uprooting and unsettling her at this particular time, although it was clear that there was a lot of ambivalence because of the strong feelings regarding the maternal figure, but also fear in terms of what had happened and what would happen in the future to M_____.

*Q.* Have you been involved in any way with the Probate Court case involving M_____ in terms of recommendations?

*A.* Yes, I have.

*Q.* Have you had occasion to recommend that she remain outside the home, in a foster home?

*A.* Yes. I have recommended that M_____ needs an environment which could offer safety, security that she could have exposure to adults who can provide for her basic needs, and make sure that she was nurtured and loved in a healthy manner, that she should be free of worrying for some of the basics in life and hopefully, not have to worry about, you know, being used and/or abused in a sexual manner.

*Q.* And was it important for that recommenda-

tion that you know the perpetrator was a family member?

*A.* Yes.

*       *       *

*Q.* Do you feel that those statements she has made to you are reliable enough for your purposes to form a medical diagnosis?

*A.* For psychological purposes.

*Q.* For psychological treatment?

*A.* Yes.

*Q.* Do you feel that it's reasonable to rely on those statements for purposes of treatment?

*A.* Yes.[41]

Finally, I am aware that the defendant here has asserted that the complainant has fabricated the assault charges and that her statements to Dr. Johnson are merely a perpetuation of a plan of deception against the defendant. However, I note that the admission of Dr. Johnson's testimony did not violate the defendant's Sixth Amendment right of confrontation. The complainant here was present at trial and subject to cross-examination, enabling the jury to weigh the complainant's statements on the witness stand against her statements to her treating psychologist.[42] Therefore, I find that

---

[41] The majority observes that the rationale of the *Renville* court, finding the defendant's identification necessary to diagnosis and treatment in instances of intrafamily or incestuous sexual abuse in order to remove the child from the source of injury is absent in the instant case as the complainant was no longer in the home at the time of her sessions with Dr. Johnson. I disagree. As evidenced by the preceding excerpt from Dr. Johnson's testimony, it is clear she found it crucial to know the complainant's identity in order to determine whether she should remain outside the family home on a permanent basis. In addition, upon review of the probate court record, it is apparent that Dr. Johnson's testimony was, at a minimum, instrumental in its decision to place the complainant in extended foster care.

[42] In the instant case, Dr. Johnson's testimony was admitted for corroborative purposes only. I decline to decide today the admissibility of similar testimony for substantive purposes where the complainant does not testify at trial.

the trial court's application of MRE 803(4) to a treating psychologist for the purpose of introducing a declarant's statements concerning the sexual assault and identification of the actor accused is both correct and in keeping with the policies underlying MRE 803(4).[43]

CONCLUSION

I conclude that (1) the defendant's Sixth Amendment right of confrontation was not violated by the exclusion of the complainant's sexual history under the Michigan rape-shield statute and MRE 404(a)(3), (2) the Michigan rape-shield statute is superseded by MRE 404(a)(3), and (3) the complainant's statements to the psychologist were properly admitted under MRE 803(4). The decision of the Court of Appeals should be affirmed.

BOYLE, J. (*concurring*). I agree with Justice BRICKLEY's conclusion that leave to appeal was improvidently granted on the question whether MRE 404(a)(3) supersedes the rape-shield statute. I join Justice ARCHER's opinion as to part I. Because there is no evidence on this record that law enforcement authorities initiated the visit which was primarily for diagnosis and treatment, MRE 803(4), I also join part III of Justice ARCHER's opinion.

LEVIN, J. The signers of the lead opinion state they agree, for the reasons set forth in part I(B) of

[43] Accord *Morgan v Foretich,* 846 F2d 941 (CA 4, 1988); *State v Boston,* unpublished opinion of the Ohio Court of Appeals, decided March 2, 1988 (Docket No. 13107); *State v Bullock,* 320 NC 780; 360 SE2d 689 (1987); *State v Nelson,* 138 Wis 2d 418; 406 NW2d 385 (1987); *State v Robinson,* 153 Ariz 191; 735 P2d 801 (1987); *State v Robison,* unpublished opinion of the Ohio Court of Appeals, decided October 22, 1986 (Docket No. 85 CA 12); *United States v DeNoyer,* 811 F2d 436 (CA 8, 1987).

Justice ARCHER's opinion, that the exclusion of evidence of complainant's "sexual history" did not violate Daniel James LaLone's Sixth Amendment right of confrontation.

The reasons given in part I(B) are that LaLone was able to introduce significant[1] and compelling "nonsexual" evidence of the complainant's bias and motive to fabricate and, alternatively, if there was error, it was harmless beyond a reasonable doubt.[2]

LaLone's conviction is reversed on other grounds, as set forth in the lead opinion, and the cause is remanded for a new trial. The Confrontation Clause issue cannot, accordingly, be resolved on the basis of harmless error. If there was error, it should not be repeated at the new trial even if it is thought this error did not warrant a new trial.

While we agree, for the reasons stated in part III of the lead opinion, that LaLone's conviction should be reversed and a new trial ordered, we would hold that the evidence of conflict between LaLone and the complainant concerning her efforts to have sexual relationships with teenage boys is admissible at the new trial because a "reasonable jury might have received a significantly different impression"[3] of the complainant's credibility had LaLone's counsel been permitted to introduce that evidence tending to show her bias and motive to fabricate.

I

Part I(B) discusses *Delaware v Van Arsdall,* 475 US 673; 106 S Ct 1431; 89 L Ed 2d 674 (1986), but

---

[1] *Ante,* p 129.

[2] *Id.*

[3] *Delaware v Van Arsdall,* 475 US 673, 680; 106 S Ct 1431; 89 L Ed 2d 674 (1986).

omits reference to the critical language in that opinion establishing a standard recently repeated in *Olden v Kentucky,* 488 US —, —; 109 S Ct 480; 102 L Ed 2d 513, 520 (1988):

> It is plain to us that "[a] reasonable jury might have received a significantly different impression of [the witness'] credibility had [defense counsel] been permitted to pursue his proposed line of cross-examination." *Delaware v Van Arsdall, supra,* p 680.

In *Olden,* the Court ruled that the exclusion of evidence of the complainant's sexual relationship with a man other than the defendant was violative of the defendant's right of confrontation.

Olden and a codefendant, both of whom are black, were charged with kidnapping, rape, and forcible sodomy. Asserting a defense of consent, Olden sought to introduce evidence that the complainant, a white married woman, was cohabitating with a witness who was black and married to someone other than the complainant. Olden contended that the complainant "concocted the rape story to protect her relationship with [the witness], who would have grown suspicious upon seeing her disembark from [the codefendant's] car."[4]

The Kentucky Court of Appeals affirmed the trial court's decision not to admit the evidence. While finding that such evidence was relevant and not barred by Kentucky's rape-shield law, the court sustained the exclusion of the evidence on the ground that its potential for unfairly prejudicing the jury outweighed its probative value. The United States Supreme Court ruled that "[t]he Kentucky Court of Appeals failed to accord proper

---

[4] *Olden, supra,* 488 US —; 102 L Ed 2d 518.

weight to petitioner's Sixth Amendment right 'to be confronted with the witnesses against him.' "[5]

The substance of what the United States Supreme Court considers to be the "proper weight" to be accorded the right of confrontation is indicated by the Court's analysis in *Olden.* Relying almost exclusively on *Delaware v Van Arsdall, supra,* the Court said:

> It is plain to us that "a reasonable jury might have received a significantly different impression of [the witness'] credibility had [defense counsel] been permitted to pursue his proposed line of cross-examination." *Delaware v Van Arsdall, supra,* at 680 . . . .
>
> While a trial court may, of course, impose reasonable limits on defense counsel's inquiry into the potential bias of a prosecution witness, to take account of such factors as "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that [would be] repetitive or only marginally relevant," *Delaware v Van Arsdall, supra,* at 679, . . . the limitation here was beyond reason. Speculation as to the effect of jurors' racial biases cannot justify exclusion of cross-examination with such strong potential to demonstrate the falsity of [the complainant's] testimony.[6]

The Court, again relying on *Van Arsdall,* added that "we find it impossible to conclude 'beyond a reasonable doubt' that the restriction on petitioner's right to confrontation was harmless."[7] The Court said that the complainant's "testimony was central, indeed crucial, to the prosecution's case."[8]

[5] *Id.,* 102 L Ed 2d 519.

[6] *Id.,* 102 L Ed 2d 520.

[7] *Id.,* 102 L Ed 2d 521.

[8] *Id.,* 102 L Ed 2d 520.

Part I(B) recognizes the centrality of the complainant's testimony in this case, yet concludes that "matters brought out on cross-examination" render any possible error harmless beyond a reasonable doubt.

II

The complainant in the instant case acknowledged that LaLone, her stepfather, had slapped her face when he accused her of stealing a candy bar and called her a liar. She also acknowledged that she had problems with her parents concerning boyfriends and had been disciplined. She said she wanted to get out of the house because the rules were too strict. She also said she was angry with her father because he "hurt me," by which she meant the sexual abuse charged against La-Lone.

The excluded evidence was LaLone's testimony that he had confronted the complainant about telephone calls to teenage boys asking to give blow jobs and if they had rubbers, and that she had admitted the phone calls in front of the whole family. There was a big row. It was then that LaLone learned about the complainant being nude below the waist with a teenage boy, DJ. The complainant told LaLone "to get fucked, that it was her business if she wanted to get laid." And then he backhanded her.[9]

Had LaLone been permitted to so testify, the jury might have concluded that the complainant was angry with him, not because he had "hurt" (sexually abused) her or because he had slapped her following an argument concerning an accusation of stealing a candy bar—as the complainant asserted—but because he was interfering with her efforts to have sexual relationships with teenage

Once it is conceded, even for the sake of argument, that there was constitutional error, it should be recognized that the error cannot be harmless beyond a reasonable doubt for the reason stated in part i(b): "[T]he significance of complainant's testimony to the people's case is readily apparent. . . . [T]he complainant's credibility was *essential* to the trier of fact's eventual verdict." (Emphasis supplied.)

[9] A more complete recital of the "sexual history" evidence that was excluded may be found, *ante,* pp 119-121.

boys. Here, as in *Olden,* the excluded testimony
tended to show that the complainant may have
fabricated the charge to protect her opportunity to
continue or have sexual relationships.

Some persons would not testify falsely, however
provoked, while others might testify falsely if pro-
voked in one manner but not in another manner.
It was for the jury, not the trial court, to decide
whether the evidence that LaLone was interfering
with the complainant's efforts to have sexual rela-
tionships with teenage boys motivated her to tes-
tify falsely even though the jury may not have
been persuaded[10] that the "nonsexual" evidence of
conflict between LaLone and the complainant mo-
tivated her to do so.

*Olden* and *Van Arsdall* require examination of
the *excluded* evidence to determine whether, pre-
sented with that evidence, a reasonable jury might
have received a significantly different impression
of the complainant's motive to fabricate charges.
Part I(B) focuses rather on the *admitted* evidence.
Even if, as asserted in part I(B), there was signifi-
cant and compelling nonsexual evidence of the
complainant's bias and motive to fabricate, the
Confrontation Clause, as construed in *Van Arsdall*
and *Olden,* requires the admission of the excluded
evidence if a reasonable jury *might* have received
a significantly different impression of the witness'
credibility had the excluded evidence been admit-
ted.

III

In *Davis v Alaska,* 415 US 308, 311; 94 S Ct

---

[10] Because of the erroneous admission of the psychologist's testi-
mony which requires a new trial, it is unclear whether the nonsexual
evidence of conflict, untainted by the inadmissible evidence, might
have been sufficient to persuade the jury that the complainant testi-
fied falsely.

1105; 39 L Ed 2d 347 (1974), the defendant's interest in developing on cross-examination an inference of bias, on the basis of the witness' "fear or concern of possible jeopardy of his probation[ary]" status for a juvenile criminal offense, conflicted with Alaska's interest in protecting the confidentiality of juvenile criminal determinations. There are striking similarities between the analysis in part I(B) and the error of the Alaska Supreme Court in *Davis.* The United States Supreme Court said in *Davis, supra,* pp 314-315:

> The Alaska Supreme Court affirmed petitioner's conviction, concluding that it did not have to resolve the potential conflict in th[e] case between a defendant's right to meaningful confrontation with adverse witnesses and the State's interest in protecting the anonymity of a juvenile offender since *"our reading of the trial transcript convinces us that counsel for the defendant was able adequately to question the youth in considerable detail concerning the possibility of bias or motive."* 499 P2d 1025, 1036 ([Alas] 1972). Although the court admitted that [the witness'] denials of any sense of anxiety or apprehension upon the safe's being found close to his home were possibly self-serving, "the suggestion was nonetheless brought to the attention of the jury, and that body was afforded the opportunity to observe the demeanor of the youth and pass on his credibility." *Ibid. The court concluded that, in light of the indirect references permitted, there was no error.*
>
> Since we granted certiorari limited to the question of whether petitioner was denied his right under the Confrontation Clause to adequately cross-examine [the witness], *the essential question turns on the correctness of the Alaska court's evaluation of the "adequacy" of the scope of cross-examination permitted. We disagree with that court's interpretation of the Confrontation Clause and we reverse.* [Emphasis added.]

Part I(B) parallels the Alaska Supreme Court's analysis rejected by the United States Supreme Court in *Davis:*

> [O]n the basis of the defendant's cross-examination of the complainant, it is clear the defendant was able to introduce compelling nonsexual evidence of the complainant's bias and motive to fabricate. Therefore, the exclusion of evidence regarding her sexual behavior does not rise to the level of constitutional error.[11]

The Alaska Supreme Court had viewed the admitted evidence in *Davis* to be "adequate." part I(B) calls the evidence admitted in this case "significant" and "compelling." Notwithstanding semantic differences, there is no meaningful distinction between the analysis of the Alaska Supreme Court and that set forth in part I(B). Both proceed on the bases of their own views concerning how much admitted evidence justifies barring a defendant from presenting other evidence that might persuade a jury of the falsity of a key witness' testimony.

Part I(B) states that "[u]nlike the defendant in *Davis,* the trial court's exclusion of the complainant's sexual history left the defendant with several avenues to explore the complainant's bias or motive to fabricate."[12] Defense counsel in *Davis* explored the witness' motive to fabricate testimony through the use of avenues other than the excluded evidence. On cross-examination, the witness acknowledged that the property alleged to have been stolen by the defendant was found near the witness' family home and that the idea had

---

[11] *Ante,* p 131.
[12] *Ante,* p 130.

crossed his mind that the police might suspect him of the crime.[13]

Even if the proffered distinction of *Davis* were accurate, evidence that might have provided a jury with a significantly different impression of a witness' bias is admissible although there are a number of other "avenues" available to the defendant to explore the complainant's bias or motive to fabricate.

IV

State courts have held that evidence tending to show the complainant's bias is admissible although the state has enacted a rape-shield law. The Supreme Court of Massachusetts ruled that *Davis* required the admission of evidence of a complainant's prior prosecutions for prostitution, tending to establish a motive to fabricate charges, that the defendant forced the complainant to engage in sexual acts in a parked automobile, related to officers who found the defendant and the complainant naked at the scene, to avoid a further prosecution for prostitution.[14] A Pennsylvania appellate court held that *Davis* required that a defendant be allowed to present evidence of a thirteen-year-old complainant's alleged sexual relationship with her brother to show that the complainant was motivated to fabricate charges as a means of punishing the defendant's interference with the complainant's incestuous relationship and as a means of removing the defendant from the home so that the incestuous relationship could continue.[15]

In other states, the defendant's constitutional

---

[13] *Davis, supra,* pp 312-313.

[14] *Commonwealth v Joyce,* 382 Mass 222; 415 NE2d 181 (1981).

[15] *Commonwealth v Black,* 337 Pa Super 548; 487 A2d 396 (1985).

right to confrontation has been held to require, under *Davis,* admission of evidence tending to show that a ten-year-old complainant had a motive to fabricate charges because the defendant discovered the complainant having sex with third parties and threatened to report what he had seen to the complainant's parents,[16] of evidence tending to show that an underage complainant had a motive to fabricate the charges because she thought she had been impregnated by a third party and was afraid to tell her mother of her sexual activity,[17] and of evidence tending to show that a fifteen-year-old complainant fabricated charges to punish the defendant for refusing to consent to her marriage to a twenty-four-year-old fiancé and for threatening to have the fiancé arrested for statutory rape and of evidence that she had on other occasions accused other family members of sexual misconduct in retaliation for threats to have her fiancé arrested.[18]

Other state court decisions noted in part I(B)[19] cite *Davis,* but were decided without reference to the "significantly different impression" standard stated in *Van Arsdall* and applied in *Olden.*

In *People v Hackett,* 421 Mich 338, 348; 365 NW2d 120 (1984), this Court recognized that the concerns that prompted enactment of the rape-shield statute must in particular cases be subordinated to a defendant's right of cross-examination under the Confrontation Clause:

> The fact that the Legislature has determined that evidence of sexual conduct is not admissible

---

[16] *State v Jalo,* 27 Or App 845; 557 P2d 1359 (1976).

[17] *State v DeLawder,* 28 Md App 212; 344 A2d 446 (1975).

[18] *Woods v State,* 657 P2d 180 (Okla Crim App, 1983). See also *State v Howard,* 121 NH 53; 426 A2d 457 (1981); *State v Vonesh,* 135 Wis 2d 477; 401 NW2d 170 (1986).

[19] *Ante,* p 131, n 22.

as character evidence to prove consensual conduct or for general impeachment purposes is not however a declaration that evidence of sexual conduct is never admissible. We recognize that in certain limited situations, such evidence may not only be relevant, but its admission may be required to preserve a defendant's constitutional right to confrontation. For example, *where the defendant proffers evidence of a complainant's prior sexual conduct for the narrow purpose of showing the complaining witness' bias, this would almost always be material and should be admitted. . . . Moreover in certain circumstances, evidence of a complainant's sexual conduct may also be probative of a complainant's ulterior motive for making a false charge.* [Emphasis added.][20]

We would hold that the excluded evidence is admissible at the new trial.

Cavanagh, J., concurred with Levin, J.

---

[20] The rule which I would abstract from these cases is that, irrespective of its prejudicial impact on the state's interests, a defendant is constitutionally entitled to cross-examine the prosecutrix about prior sexual conduct with third persons if the witness's responses, when considered with other evidence in the case, might be sufficient to raise in the mind of a juror a reasonable doubt as to whether the intercourse was consensual. [*People v Patterson,* 79 Mich App 393, 409; 262 NW2d 835 (1977) (Cavanagh, J., concurring).]