# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

PAUL EUGENE SHAMBLIN,

      Defendant-Appellant.

UNPUBLISHED
April 21, 2016

No. 325653
Allegan Circuit Court
LC No. 13-018406-FH

Before: SAAD, P.J., and BORRELLO and GADOLA, JJ.

PER CURIAM.

Defendant was convicted of four counts of third-degree criminal sexual conduct (CSC III), MCL 750.520d; two counts of fourth-degree criminal sexual conduct (CSC IV), MCL 750.520e; and indecent exposure, MCL 750.335a(2)(b). He appeals as of right. We affirm.

## I. FACTUAL BACKGROUND

This case arises from a sexual relationship between defendant and the victim, an 18-year-old woman with a history of mental illness and diagnoses of attention deficit and hyperactivity disorder, fetal alcohol syndrome, and reactive attachment disorder. The victim's physician testified that due to her conditions, the victim had difficulty with learning, abstract reasoning, and complex thought and could "become attached to someone and be very trusting in that relationship in a naïve sort of way." In June 2012, the victim moved into the home of defendant and his wife, Peggy, after alleging that her father was abusing her.

The victim testified that she viewed defendant and Peggy as parents. According to the victim, defendant often walked around the house naked and he used the family's hot tub while wearing nothing. The victim explained that at some point after moving in, defendant began "teaching" her about sex because "[h]e wants to show me how it goes so when I'm older and have a husband, how it might work with my husband." The victim testified that she and defendant had sex on several occasions. The victim also testified that defendant touched her "butt area" with his penis, had her rub his penis with her hands, and kissed her on the lips and chest. The victim explained that she thought it was a good thing that defendant was teaching her so she could "figure out how to do it when [she was] with [her] own husband," and she thought defendant was "teaching [her] as a dad." The jury convicted defendant of all counts charged.

-1-

## II. EVIDENCE ADMISSIBILITY

Defendant first argues that the trial court abused its discretion when it admitted testimony from a nurse about a conversation she had with Peggy while she was in the hospital recovering from surgery. The nurse testified that, while completing a physical assessment of Peggy after surgery at a hospital, she noticed that Peggy was crying "a lot." The nurse asked Peggy "if she was having any pain," which Peggy denied. The nurse went on to ask Peggy why she was crying, and Peggy replied that she was upset because she saw her husband having sex with the victim. Defendant argues that Peggy's statement was not made for the purpose of medical treatment or diagnosis under MRE 803(4), and therefore constituted inadmissible hearsay.

Decisions about the admissibility of evidence are within the trial court's discretion and should only be reversed if there is a clear abuse of discretion. *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998). An abuse of discretion occurs when a trial court chooses an outcome falling outside the range of reasonable and principled outcomes. *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007). However, decisions regarding the admissibility of evidence frequently involve preliminary questions of law, and questions of law are reviewed de novo. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

In general, hearsay is not admissible unless it meets the requirements of an exception set forth in the Michigan Rules of Evidence. MRE 802; *People v Stamper*, 480 Mich 1, 3; 742 NW2d 607 (2007). MRE 803(4) provides that "[s]tatements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment" are admissible as an exception to the hearsay rule. The rationale for this exception "is the existence of (1) the reasonable necessity of the statement to the diagnosis and treatment of the patient, and (2) the declarant's self-interested motivation to speak the truth to treating physicians in order to receive proper medical care." *People v Garland*, 286 Mich App 1, 9; 777 NW2d 732 (2009).

The trial court abused its discretion by concluding that Peggy's statement was admissible under MRE 803(4). When the nurse noticed Peggy was crying, she asked whether she was in any physical pain, which Peggy denied. The nurse then asked Peggy why she was crying, and Peggy answered that she was upset because she saw defendant and the victim having sex. Peggy was not seeking medical treatment or diagnosis at the time she made the statement about defendant and the victim, and her statement was not relevant to her medical condition or care, particularly after Peggy informed the nurse that she was not in physical pain. Further, Peggy's statement did not describe her "medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof." MRE 803(4); see also *People v Meeboer*, 439 Mich 310, 322; 484 NW2d 621 (1992). Although Peggy's statement could possibly be relevant to diagnose or treat her emotional or psychological state, our Supreme Court has explained that the language in MRE 803(4) specifically limits the exception to "medical treatment or medical diagnosis," and the rule does "not leave room for speculation on hearsay which may indeed be reliable and useful for *other kinds* of treatment." *People v LaLone*, 432 Mich 103, 114; 437 NW2d 611 (1989) (emphasis added). Accordingly, the trial court abused its discretion by admitting the testimony.

Reversal is not required, however, because the error was not outcome determinative. "A preserved error in the admission of evidence does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013) (quotation marks and citations omitted). In this case, it is not more probable than not that, without the nurse's testimony, a different outcome would have resulted. The record contains significant evidence supporting defendant's convictions. The victim testified extensively about her sexual encounters with defendant, and a detective testified that, when he asked defendant if he had sex with the victim, defendant affirmatively nodded his head. Moreover, defense counsel's theory of the case was not that defendant did not have sex with the victim, but rather that any sex was consensual. Peggy's statement that she saw defendant and the victim having sex would have no effect on the consent defense. Therefore, although the trial court abused its discretion by admitting the testimony, reversal is not required.

## III. WITNESS QUESTIONING

Defendant next argues that the trial court's questioning of witnesses deprived him of a fair and impartial trial. This argument is unpreserved, so our review is for plain error affecting substantial rights. *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Further, reversal is only required if the plain error resulted in the conviction of an actually innocent defendant or seriously affected the integrity, fairness, or public reputation of the judicial proceedings. *Id*.

A trial judge's conduct violates a defendant's constitutional guarantee of a fair trial if the conduct "pierces the veil of judicial impartiality." *People v Stevens*, 498 Mich 162, 170; 869 NW2d 233 (2015). The veil of judicial impartiality is pierced when, "considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. at 171. To evaluate this question, this Court considers several factors, including

> the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. [*Id*. at 172.]

This list is not exhaustive, and reviewing courts may consider other relevant factors. *Id*.

Additionally, relevant to this appeal, a judge may not show disbelief of a witness or share his views on disputed issues with the jury. *Stevens*, 498 Mich at 174. Judges may, however, question witnesses "to produce fuller and more exact testimony or elicit additional relevant information." *Id*. at 173. When engaging in judicial interrogation, a trial judge's "central object . . . should be to clarify." *Id*. "As long as the questions would be appropriate if asked by either party and, further, do not give the appearance of partiality . . . a trial court is free to ask

questions of witnesses that assist in the search for truth." *People v Davis*, 216 Mich App 47, 52; 549 NW2d 1 (1996).

Considering the totality of the circumstances, we conclude that it is not reasonably likely that the trial court's conduct in this case improperly influenced the jury by creating the appearance of advocacy for or partiality against defendant. Although the trial court questioned many of the witnesses presented at trial, his interrogation was not excessive in the context of the length of the trial. The great majority of the trial court's questions helped to elicit relevant information from the witnesses and to clarify confusing points. After examining the complete record, we do not believe that the trial court's conduct pierced the veil of judicial impartiality.

Further, we reject defendant's argument that the trial court showed disbelief in Peggy's testimony before the jury when the jury requested that a question be asked about the time frame in which the accusations occurred. The trial court stated, "We will have that information through the testimony of another witness I expect before the conclusion of the case, but it won't be from this witness who is not authoritative on that subject." This statement does not imply that Peggy was not authoritative overall, that her testimony was not credible, or that the trial court did not believe her testimony. Moreover, any prejudice caused by the trial court's questions or comments was cured when he instructed the jury as follows:

> My comments, rulings, questions and instructions are also not evidence. It is my duty to see that the trial is conducted according to the law and to tell you the law that applies to this case. However, when I make a comment or give an instruction I am not trying to influence your vote or express a personal opinion about this case. If you believe I have an opinion about how you should decide this case you must pay no attention to that opinion.

"Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Any prejudice caused by the trial court's questions or comments was cured by these instructions.

IV. INSTRUCTIONAL ERROR

Finally, defendant argues that he was denied his constitutional right to a clear and accurate set of jury instructions. Unpreserved claims of instructional error are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 761-764. Reviewing courts must "consider the instructions as a whole, rather than piecemeal, to determine whether any error occurred." *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). The defendant bears the burden of showing that the instructional error resulted in a miscarriage of justice. *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010).

"[A] defendant is entitled to have all the elements of the crime submitted to the jury in a charge which is neither erroneous nor misleading." *People v Feezel*, 486 Mich 184, 203; 783 NW2d 67 (2010) (quotation marks and citation omitted). "It is an error of constitutional magnitude to omit an instruction on an element of a crime." *People v Martin*, 271 Mich App 280, 338; 721 NW2d 815 (2006). However, "an imperfect instruction is not grounds for setting

aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." *Kowalski*, 489 Mich at 501-502.

At trial, before deliberations began, the trial court erroneously instructed the jury that, to convict defendant of the first count of CSC IV, it was required to find that defendant used force or coercion to commit the sexual act. Both CSC IV counts were premised on the victim's mental incapacity and not on force or coercion. However, this plain error did not deny defendant his constitutional right to a clear and accurate set of jury instructions because, before deliberations were complete, the trial court cured the error by explaining the mistake and properly instructing the jury on the relevant elements. After receiving the new instructions, the jury continued to deliberate, and ultimately reached a verdict. The revised instructions accurately presented the issues and contained all of the proper elements of the charged crimes. There was no plain error in the instructions on which the jury reached its verdict, and jurors are presumed to follow their instructions. See *Abraham*, 256 Mich App at 279. In sum, although the trial court initially erred in its instruction for CSC IV, this error did not affect defendant's substantial rights.

Affirmed.


/s/ Henry William Saad
/s/ Stephen L. Borrello
/s/ Michael F. Gadola

-5-