*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GREG ALLEN BRENEMAN,

        Defendant-Appellant.

UNPUBLISHED
January 17, 2019

No. 340824
Berrien Circuit Court
LC No. 2017-000016-FC

Before: MARKEY, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Defendant, Greg Breneman, appeals as of right his jury convictions of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a); two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a); and aggravated indecent exposure, MCL 750.335a. The trial court sentenced Breneman, as a third-offense habitual offender, MCL 769.11, to a term of 26 to 75 years' imprisonment for each of the two convictions of CSC-I; a term of 12 to 30 years' imprisonment for each of the two convictions of CSC-II; and a term of 2 to 4 years' imprisonment for the conviction of aggravated indecent exposure. Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

The complainant testified that when she was 12 years old, Breneman sexually assaulted her on two occasions. She described Breneman's actions during those sexual assaults and never indicated that a different person could have been the perpetrator. A medical examination supported the complainant's testimony regarding the fact that she was assaulted and the manner in which she was assaulted. In addition, the complainant testified that Breneman ejaculated onto a blanket during the sexual assault, and the prosecution presented scientific testimony that Breneman's semen was on the blanket that the complainant and her mother provided to police.

## II. INEFFECTIVE ASSISTANCE

## A. STANDARD OF REVIEW

Breneman first argues that his trial lawyer rendered ineffective assistance because he failed to object to inadmissible testimony given by two sexual assault experts. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "This Court reviews findings of fact for clear error and questions of law de novo." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "Where there has been no evidentiary hearing and no findings of fact by the trial court, this Court reviews de novo the entire record to determine whether the defendant's trial counsel's representation constituted the ineffective assistance of counsel." *People v Rose*, 289 Mich App 499, 524; 808 NW2d 301 (2010). Our review "is limited to mistakes apparent on the record." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

## B. ANALYSIS

To establish a claim of ineffective assistance, a defendant must prove that his lawyer's performance was objectively unreasonable in light of prevailing professional norms and that, but for his lawyer's error, it is reasonably probable that the outcome would have been different. *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). It is presumed that the defendant's lawyer provided effective assistance. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). The defendant bears a heavy burden of proving otherwise. *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009). In doing so, a defendant must overcome a strong presumption that the challenged conduct might be considered sound trial strategy. *People v Knapp*, 244 Mich App 361, 385-386, 386 n 7; 624 NW2d 227 (2001). The defense lawyer's performance must be measured against an objective standard of reasonableness. *Payne*, 285 Mich App at 188, 190. This Court "neither substitutes its judgment for that of counsel regarding matters of trial strategy, nor makes an assessment of counsel's competence with the benefit of hindsight." *People v Mutuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004).

Breneman first argues that his lawyer rendered ineffective assistance when he failed to object to a nurse examiner's testimony that, during her medical examination, the complainant identified Breneman as her assailant. Breneman argues that the nurse examiner's testimony did not fall within the exception to the hearsay rule provided in MRE 803(4) because the complainant's statements identifying Breneman as the perpetrator were not made for the purposes of medical treatment. We agree.

MRE 803(4) provides that statements made for purposes of medical treatment or diagnosis are not excluded by the hearsay rule, even though the declarant is available as a witness. Breneman relies primarily on *People v LaLone*, 432 Mich 103; 437 NW2d 611 (1989), and *People v DePlanche*, 183 Mich App 685; 455 NW2d 395 (1990). In *LaLone*, the defendant was convicted of CSC-I. *LaLone*, 432 Mich at 107. At the defendant's trial, the trial court admitted the testimony of a psychologist, the substance of which was the complainant's hearsay statements that she had been sexually abused by the defendant. *Id*. at 108-109. Examining the admissibility of the complainant's statements to the psychologist under MRE 803(4), the Michigan Supreme Court stated that "statements made in the course of the treatment of psychological disorders may not always be as reliable as those made in the course of the treatment of physical disorders." *Id*. at 110. The Court held that the complainant's statements

did not fall within either the literal or intended purpose of MRE 803(4) and, therefore, were erroneously admitted. *Id*. at 116.

In *DePlanche*, this Court interpreted and applied the meaning of *LaLone* in a context that did not involve a psychologist. In *DePlanche*, the defendant was convicted of CSC-I involving sexual penetration with a child under 13 years of age. At the defendant's trial, the prosecutor presented the testimony of a pediatrician who examined the complainant approximately six months after the alleged incident. *DePlanche*, 183 Mich App at 686. The pediatrician testified that, as part of the examination, his assistant conducted an interview of the complainant to determine what she experienced. *Id*. at 687. Over the defendant's objection, the pediatrician testified that, during the interview, the complainant stated that defendant was the person who had committed the sexual assault. *Id*. On appeal, this Court held that, "Merely because the statements were made to a medical doctor is an insufficient basis for distinguishing the present case from *LaLone*." *Id*. at 690. In addition, this Court explained that there were many circumstances of the case that called into question the reliability of the challenged statements, including the fact that the medical witness was not examining the complainant in order to render medical treatment, but that "the examination was done either to substantiate the allegations of abuse or to discover whether the child needed therapy or protection." *Id*. This Court concluded that, under the rationale set forth in *LaLone*, the defendant's conviction was required to be reversed and the case remanded for a new trial in which the challenged hearsay testimony could not be admitted. *Id*. at 691-692.

In this case, the testimony to which Breneman objects was provided by a nurse examiner who was not a medical doctor and who did not see the complainant for purposes of medical treatment. Similar to the situation presented in *DePlanche*, the nurse examiner conducted an examination of the complainant solely "to substantiate the allegations of abuse or to discover whether the child needed therapy or protection," and not to provide medical treatment. See *id*. at 690. The examination was also conducted over three months after the sexual assaults occurred, and there was no allegation of possible pregnancy or sexually transmitted disease that might make the identity of the perpetrator necessary for medical treatment or care. On the facts of this case, we conclude that the nurse examiner's testimony regarding the complainant's statements Breneman assaulted her were not admissible under MRE 803(4).

Yet, when reviewing a claim of ineffective assistance, this Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v Washington*, 466 US 668 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984). In addition, an appellate court "must conclude that the act or omission of the defendant's trial counsel fell within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission under the facts known to the reviewing court, there might have been a legitimate strategic reason for the act of omission." *People v Gioglio (On Remand)*, 296 Mich App 12, 22-23; 815 NW2d 589 (2012), vacated in part on other grounds 493 Mich 864 (2012).

We conclude that Breneman's lawyer had a legitimate tactical reason for refraining from objecting to the nurse examiner's testimony. As acknowledged by the Michigan Supreme Court in *People v Bahoda*, 448 Mich 261, 287 n 54; 531 NW2d 659 (1995), "Certainly there are times when it is better not to object and draw attention to an improper comment. This may be one of

those situations." By the time the nurse examiner testified at trial, both the complainant and her mother had already testified. The complainant directly identified Breneman as the person who digitally penetrated her. In addition, the complainant's mother testified that her daughter had identified Breneman as the perpetrator during her initial disclosure of the sexual abuse. If Breneman's lawyer had objected to the nurse examiner's testimony relating the complainant's statements, the jury might well have concluded that Breneman was attempting to hide something or that he feared the nurse examiner's testimony for some reason. Instead of running that risk, Breneman's lawyer chose to pursue a defense that the complainant was simply not credible in her identification of Breneman as the perpetrator, whether that identification was made to her mother, police, or the nurse examiner. Because "there might have been a legitimate strategic reason for the act of omission," *Gioglio (On Remand)*, 296 Mich App at 22-23, we cannot conclude that Breneman's lawyer's failure to object to the nurse examiner's hearsay testimony was objectively unreasonable in light of prevailing professional norms.

Furthermore, even if Breneman's lawyer had objected to and prevented the nurse examiner from providing this hearsay testimony, Breneman has failed to demonstrate any reasonable probability that the outcome of the trial would have been different. The complainant testified at trial and was subject to cross-examination. She testified that Breneman was the person who sexually assaulted her on two occasions. In addition, the complainant's mother testified and was subject to cross-examination. The mother related her conversation with the complainant in the school office, when the complainant identified Breneman as the person who sexually assaulted her. Furthermore, the complainant testified that Breneman ejaculated on a blanket while engaged in the act of digitally penetrating her, and the prosecution provided scientific evidence indicating that Breneman's semen was found on the blanket provided to police. In light of this evidence, the outcome of the trial would not have been different, even if the nurse examiner had not been allowed to testify to the complainant's statements that Breneman assaulted her. Consequently, Breneman cannot establish a claim of ineffective assistance based on the nurse examiner's testimony.

Breneman next argues that the testimony of a second expert witness violated the rule articulated by our Supreme Court in *People v Peterson*, 450 Mich 349; 537 NW2d 857 (1995). Breneman argues that the expert witness offered an opinion that the complainant did not fabricate her claims that Breneman sexually assaulted her, and Breneman argues that this testimony was tantamount to rendering an expert opinion that he was guilty. Breneman's lawyer did not object to this testimony at trial on the grounds articulated on appeal, and Breneman argues that the failure to do so constituted ineffective assistance.

In *Peterson*, our Supreme Court clarified the proper scope of expert testimony in childhood sexual abuse cases, and reaffirmed its prior holdings that:

> (1) an expert may not testify that the sexual abuse occurred, (2) an expert may not vouch for the veracity of a victim, and (3) an expert may not testify whether the defendant is guilty. However, . . . (1) an expert may testify in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim, and (2) an expert may testify with regard to the consistencies between the

behavior of the particular victim and other victims of child sexual abuse to rebut an attack on the victim's credibility. [*Peterson*, 450 Mich at 352-353.]

Breneman argues that the expert's testimony was essentially an improper opinion that the sexual abuse occurred and that her testimony constituted vouching for the veracity of complainant. In support of this argument, Breneman points to the expert's testimony that she excluded the possibility that the complainant was lying when she stated that Breneman sexually assaulted her. Breneman argues that this testimony violated the rule that an expert witness cannot testify that the defendant is guilty. The testimony in question is as follows:

*Q*. Alright. In this case, did you consider the hypothesis that this was a false allegation?

*A*. That—That's, almost always a hypothesis that we have in our mind when we do the interview.

*Q*. And, did you consider the—the hypothesis that it was maybe because the complainant here, [the complainant], was in trouble?

*A*. Yes, that was—that was one of the hypothesis that I had going into as I watched the interview, and that was one that I felt like got ruled out during the course of that interview.

*Q*. And, without saying what [the complainant]said, can you explain why it was ruled out during the course of that interview?

*A*. In—I'm not gonna talk about that case in particular. In general, when I—when one of my hypotheses is, this is a child who might have been angry and was retaliating by fabricating an allegation of abuse, I look for things that talk about the general nature of the relationship with the perpetrator; are they complaining about him the whole time, do they—do they portraying [sic] as being—him as being—him as being really bad, really evil, or is there a balance to how they talk about their relationship with the person, or, do they talk about the person in positive terms, because, if you're mad and angry and retaliating, you're probably not gonna talk about 'em in glowing terms. So—So the way a child described the relationship with the perpetrator helps us rule in—in or out that idea that they fabricated an allegation to be—to get back at someone.

*Q*. Alright. Does the amount of detail that a child is able to provide help you at all in ruling out that they made up the story on the spot to get out of trouble or something of that nature?

*A*. Yeah. The—The amount of detail a child provides is what we look at to rule out whether a child has fabricated the allegation for any reason, whether it's anger or anything else. And what we look for is, spontaneous detail, detail that the child brings in without us asking about it, and also detail about s—sexual things that would be an unusual thing for a child—a nonsexually active child to know. So—And we ask for sensory detail; how things felt, how things looked,

how things smelled, how things tasted. That kind of detail is unlikely for a young child to have unless they've experienced it firsthand. And so, those—those details really help us rule out whether we feel like a child's been coached or a child on their own has made up an allegation of abuse.

*Q*. And you indicated that in this case you were able to rule that out as an hypothesis—or, a motivation for saying this happened?

*A*. Yes.

On appeal, the prosecution argues that the expert did not testify that she ruled out the hypothesis that the complainant made a false allegation. Instead, the prosecution contends that the expert only testified that she ruled out the hypothesis that the complainant's allegation was motivated by the fact that she was in trouble in school. The prosecution's argument is unconvincing. As is clear from the testimony above, the expert's testimony was improper under the rule set forth in *Peterson*. Although the expert tried to distance herself from the specific case before her, she affirmatively testified that she had ruled out the possibility that the complainant made up the allegations because she was in trouble. Given that the defense was, essentially, that the complainant made up the allegations, i.e. fabricated the allegations, the expert's testimony amounted to an improper vouching for the complainant and an opinion that Breneman was guilty.

However, the error in the admission of the expert's testimony was cured by the limiting instruction read by the trial court to the jury at the close of trial. The trial court properly instructed the jury that the expert witness's testimony could only be considered as evidence regarding whether the complainant's acts and words were consistent with those of sexually abused children, and that the testimony could not be considered an opinion that the child was telling the truth. "Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Therefore, even if Breneman's lawyer erroneously failed to object to the expert testimony, this Court must presume that the jury only considered the expert testimony for proper purposes. Breneman cannot establish any reasonable probability that the outcome of the trial would have been different if counsel had objected to and prevented the expert witness from providing this testimony. Therefore, Breneman cannot establish a claim of ineffective assistance.

### III. PROSECUTORIAL MISCONDUCT

### A. STANDARD OF REVIEW

Breneman next argues that the prosecutor engaged in misconduct that deprived him of a fair trial because the prosecutor elicited the above challenged testimony from the nurse examiner and the expert witness. "In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "Review of alleged prosecutorial misconduct is precluded unless the defendant timely and specifically objects, except when an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice." *People v*

*Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008) (quotation marks and citation omitted). Breneman did not object to the prosecutor's questions of the witnesses and did not object to the testimony elicited by the prosecutor to which he now objects. Thus, the claim of prosecutorial misconduct was not preserved for appellate review. As stated by this Court in *Unger*, "[b]ecause the challenged prosecutorial statements in this case were not preserved by contemporaneous objections and requests for curative instructions, appellate review is for outcome-determinative, plain error." *Id*. "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id*. (quotation marks and citation omitted).

## B. ANALYSIS

The test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context. *Id*. Generally, prosecutors are accorded great latitude regarding their arguments and conduct. *Bahoda*, 448 Mich at 282. "A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *Dobek*, 274 Mich App at 70.

Breneman argues that the prosecutor's questioning of the nurse examiner, which elicited an inadmissible hearsay statement, and the prosecutor's questioning of the child sexual abuse expert witness, which elicited an improper vouching for the complainant's veracity, constituted prosecutorial misconduct. We disagree. Breneman argues only that the prosecutor sought to admit evidence that was inadmissible, but does not argue that the prosecutor did so in bad faith or with an improper motive. Because a prosecutor's good-faith effort to admit evidence does not constitute misconduct, see *id*., Breneman cannot prevail on his prosecutorial misconduct claim simply because the testimony elicited by the prosecutor was inadmissible.

Moreover, Breneman cannot show that any error was outcome determinative. The complainant testified at trial that Breneman sexually assaulted her on two occasions. Her testimony included a vivid description of Breneman ejaculating onto a blanket while digitally penetrating her. The prosecutor presented evidence at trial that Breneman's semen was found on the blanket that the complainant and her mother provided to police for DNA testing. This evidence directly tied Breneman to the sexual assault. Given this evidence, which was already in the record when the two witnesses testified, the testimonies were cumulative and did not change the outcome of the trial. Because Breneman cannot establish the occurrence of plain error, he is not entitled to relief on his unpreserved claim of prosecutorial misconduct.

Affirmed.

/s/ Jane E. Markey
/s/ Michael J. Kelly
/s/ Brock A. Swartzle