*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. A. THOMAS, Minor.

UNPUBLISHED
April 14, 2026
10:52 AM

No. 377023
Wayne Circuit Court
Family Division
LC No. 2025-000265-NA

Before: KOROBKIN, P.J., and YOUNG and BAZZI, JJ.

PER CURIAM.

Respondent-father appeals as of right the initial order of disposition regarding his son, MT.[1] Respondent-father further contests the trial court's earlier order removing MT from his care and custody. We affirm the trial court's adjudication with respect to respondent-father and reverse the order removing MT from respondent-father's care.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This appeal arises out of the trial court's assertion of jurisdiction over and removal of MT on the basis of a history of domestic violence between respondent-father and respondent-mother and an altercation with a neighbor involving a gun. On March 19, 2025, petitioner, the Michigan Department of Health and Human Services, filed a temporary custody petition seeking jurisdiction over MT and his removal from respondents' home. At respondents' preliminary hearing, Children's Protective Services (CPS) specialist Mary Campbell-Williams testified that it was contrary to MT's welfare to remain in respondents' care because of domestic violence, untreated mental health concerns, and criminality. She explained that in January 2025, CPS learned of allegations that respondent-father hit respondent-mother in the stomach so hard that she dropped MT in the snow. The allegation, however, could not be substantiated. As that investigation was

---

[1] The order pertained to both respondent-father and respondent-mother of MT; however, respondent-mother is not party to this appeal, nor any other appeal pending in this Court.

being closed, CPS received information about another incident during which a weapon was purportedly brandished in MT's presence.

The resulting investigation revealed that respondents were at a gas station on March 10, 2025, with MT in the back seat, when they encountered their neighbor. Respondent-mother got out of her vehicle and instigated a verbal altercation with the neighbor. Respondent-father got involved to defend respondent-mother, but both respondents eventually returned to their vehicle before the altercation became physical. Respondents' neighbor allegedly told CPS investigators that respondent-mother said she "had a bullet with his name on it." He further claimed that respondent-mother brandished her gun. According to Campbell-Williams, respondent-mother confirmed that she owned a gun, stated she brandished a weapon, and indicated that MT was in the backseat of the car at the time. Respondents' neighbor likewise claimed the child was in the vehicle. Respondent-father confirmed as much when he was interviewed separately but later suggested the incident happened after MT was dropped off to visit a maternal great-aunt.

Campbell-Williams confirmed that respondents also had a history of domestic violence; CPS had substantiated two other domestic violence allegations since 2024, at least one of which involved an alteration in MT's presence and resulted in MT being struck by a plastic pop bottle thrown by respondent-father. Respondent-father was charged with fourth-degree child abuse and domestic violence in relation to that incident, but the charges were ultimately dismissed. Campbell-Williams found it concerning that respondents were still living and planning together, despite their volatile history. As it related to respondent-father, Campbell-Williams agreed that the risks to MT were limited to the domestic violence issues.

The trial court noted that the domestic violence allegations were "very concerning," found that petitioner made reasonable efforts to prevent removal, and ordered that MT be placed with petitioner. In its order following the hearing, the court reiterated that it was contrary to MT's welfare to remain in respondents' care because he was "at risk due to [domestic violence], criminality, and untreated mental health." The court summarized the March 10, 2025 incident at the gas station, the family's domestic violence history, respondent-mother's untreated mental health concerns, and a threat respondent-mother made at a team decision meeting (TDM), concluding MT "would be at an ongoing and substantial risk of harm due to threatened harm and [respondent-mother's] escalating behaviors." The trial court also checked boxes on the form order stating that custody with respondents presented a substantial risk of harm to MT, no services or other arrangements short of removal would reasonably safeguard MT from risk of harm, and the conditions of MT's out-of-home placement were adequate to safeguard his health and welfare. At a continued preliminary hearing the following month, the parties waived probable cause, and the trial court authorized the petition.

At respondents' July 1, 2025 combined trial and dispositional hearing, Campbell-Williams primarily reiterated her preliminary hearing testimony and the contents of her investigative report, but additionally testified that, a short time after the March 18, 2025 TDM, she learned that respondents were no longer planning together, stating that "that's when they pretty much ended their relationship." Respondent-mother's primary care physician, Dr. Jennifer Heselschwerdt, testified about respondent-mother's mental health diagnoses and treatment. Dr. Heselschwerdt asserted that respondent-mother reported domestic violence incidents with respondent-father to her several times. On one occasion, respondent-father was alleged to have punched respondent-

-2-

mother. On another occasion, he was alleged to have "strangled her with intent to end her life." However, Dr. Heselschwerdt stated that she did not observe any injuries on either occasion. Dr. Heselschwerdt also confirmed that her clinic had previously reported to CPS an allegation that respondent-father "assaulted or abused" MT.

Respondent-father, for his part, denied ever hitting respondent-mother. He further denied that he had any substance abuse issues or had ever been diagnosed with any mental health conditions. Respondent-father testified that he had a job and was willing to take custody of MT. According to respondent-father, he completed anger management classes in 2024 as a condition of a plea bargain in which the domestic violence and child abuse charges against him were dismissed.

Respondent-mother testified that she was in fact a victim of domestic violence, on multiple occasions, and the domestic violence was inflicted by respondent-father. According to respondent-mother, the abuse started shortly after she became pregnant in 2023 and continued on a regular basis until March 2025. Respondent-mother claimed to have photographs on her phone showing marks on her neck and the mark left by the bottle that struck MT's head. During one incident, respondent-father broke the kitchen door by slamming respondent-mother's head into it.

Ultimately, the trial court concluded that, based upon the testimony presented, there were statutory grounds to exercise jurisdiction pursuant to MCL 712A.2(b)(2), finding that MT's home was unfit by reason of neglect, cruelty, drunkenness, criminality, and depravity on the part of the parents.[2] Specifically, the trial court found that domestic violence had occurred in front of MT. The trial court further determined that respondent-mother's brandishing of a gun represented an unreasonable risk of harm to MT, noting that "[i]t could've been a very serious incident." Following the issuance of the pertinent orders of adjudication and disposition, this appeal ensued.

## II. REMOVAL

Respondent-father argues that the trial court erred by removing MT from his care on the basis of insufficient evidence and findings of fact. We agree.

We review de novo the interpretation and application of statutes and court rules. *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014). "A trial court's factual findings are reviewed for clear error." *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020). "A finding is only clearly erroneous if an appellate court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).

"At the preliminary hearing, the court must decide whether to authorize the filing of the petition and, if authorized, whether the child should remain in the home, be returned home, or be

---

[2] The trial court referred to MCL 712A.2(b)(1) and (2) in its oral ruling, but its written order of adjudication found jurisdiction under the latter provision only. Because a trial court "speaks through its written orders and judgments, not through its oral pronouncements," *In re Baham*, 331 Mich App 737, 747 n 6; 954 NW2d 529 (2020) (quotation marks and citation omitted), we construe the record as reflecting that jurisdiction was found only under MCL 712A.2(b)(2).

placed in foster care pending trial." *In re McCarrick/Lamoreaux*, 307 Mich App 436, 448; 861 NW2d 303 (2014), quoting MCR 3.965(B)(12) (quotation marks omitted). However, a child can be placed in foster care only if the trial court finds, by a preponderance of the evidence, that each of the conditions specified by MCL 712A.13a(9) are met. *In re Benavides*, 334 Mich App at 168; *In re Williams*, 333 Mich App 172, 183; 958 NW2d 629 (2020) (stating that the preponderance of the evidence standard applies to cases where the court is merely assuming jurisdiction over the child and not terminating the parent's rights in that child). See also MCR 3.965(C)(2)(a) through (e). MCL 712A.13a(9) delineates the following conditions:

> (a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.

> (b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from risk as described in subdivision (a).

> (c) Continuing the child's residence in the home is contrary to the child's welfare.

> (d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

> (e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare.

A trial court's factual findings generally need not be exhaustively detailed, but "when a statute or court rule requires factual findings as to an enumerated list of factors, the trial court must make a record of its findings as to each and every factor sufficient for [us] to conduct a meaningful review." *In re Williams*, 333 Mich App at 183.

The trial court appears to have satisfied its obligations under MCL 712A.13a(9) with respect to Subdivisions (a), (c), and (d). Specifically, the trial court found that respondent-father's recent history of domestic violence and respondent-mother's erratic behavior, which included the altercation at the gas station and her thinly veiled threat made during the TDM, represented "an ongoing and substantial risk of threatened harm" to MT; therefore, it would be contrary to MT's well-being to remain in the home. The trial court further resolved that reasonable efforts to prevent removal were made when investigators interviewed witnesses; held the TDM; arranged for voluntary, temporary placement; made a family-impact referral; and offered domestic violence services to respondents.

As for Subdivision (b), the trial court does not appear to have considered any alternatives short of removal, nor did petitioner submit any evidence that would support such a finding. As respondent-father notes, the only indication that the trial court satisfied its obligations with respect to Subdivision (b) is a box checked on the trial court's order following the first preliminary hearing. However, the transcript from that hearing is contrary to such a finding, and petitioner's argument that the trial court made satisfactory findings under Subdivision (b) when it "found the child was in harm's way if he remained with either parent" is unpersuasive. Subdivision (b) is in part about the risk of harm to the child, insofar as it incorporates Subdivision (a), but Subdivision (b) is

ultimately about whether *alternatives to removal*—be they services or other arrangements—can adequately safeguard the child from the risk of harm described in Subdivision (a). The trial court did not consider the adequacy of alternative arrangements at all. Because the trial court is required to make specific factual findings for *each* of the factors listed under MCL 712A.13a(9) before removing a child from custody, the trial court's failure to consider any alternatives short of removal under Subdivision (b) is dispositive.

Whether the trial court satisfied its obligations under Subdivision (e) is disputable. At the time of the preliminary hearing, MT had been living away from his parents, as he resided with respondent-mother's aunt. Although the trial court does not appear to have made specific findings with respect to the conditions of that custody arrangement, it nonetheless elicited limited testimony on the issue during the following exchange with the CPS investigator:

> *Q.* Is [the aunt's home] where the child is currently residing?
>
> *A.* Correct.
>
> *Q.* The Department feels that's a safe placement.
>
> *A.* Aunt has been cooperative. And anything that we've asked, she has been cooperative, yes.
>
> *Q.* Except she changed her story [about what time MT was dropped off at her house on the day of the altercation at the gas station] on this instance.
>
> *A.* Yes.

The trial court appears to have been attempting to elicit testimony to determine whether MT's placement with his great-aunt would be "adequate to safeguard [MT's] health and welfare." MCL 712A.13a(9)(e). However, the witness's answer to the trial court's question regarding the safety of MT's placement with his great-aunt was equivocal. Petitioner's answer in turn made the trial court's follow-up question seem similarly ambiguous: One cannot be certain whether the trial court's reference to the great-aunt's changed story is supposed to illustrate an exception to her cooperativeness or to the witness's opinion that placement with her would safeguard MT's health and welfare. Whatever the correct interpretation, the ambiguous nature of the exchange ultimately frustrates meaningful appellate review with respect to Subdivision (e). *In re Williams*, 333 Mich App at 183. Therefore, the trial court has not satisfied its obligations with respect to Subdivision (e), and MT's removal was improper. Consequently, we reverse the trial court's March 25, 2025 order removing MT from respondent-father's care and custody.

## III. JURISDICTION

Respondent-father argues that the trial court erred by exercising jurisdiction over MT on the basis of insufficient evidence and without first considering respondent-father's conduct and fitness independently from respondent-mother. We disagree.

As it relates to exercising jurisdiction,

the factfinder must determine by a preponderance of the evidence that the child comes within the statutory requirements of MCL 712A.2. Challenges to the court's decision to exercise jurisdiction are reviewed for clear error in light of the court's finding of fact. A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses. [*In re Kellogg*, 331 Mich App 249, 253; 952 NW2d 544 (2020) (quotation marks and citations omitted).]

In challenging the sufficiency of the evidence supporting the trial court's assertion of jurisdiction, respondent-father contends that most of petitioner's evidence concerning respondent-father constituted hearsay that was inadmissible for purposes of the adjudication. Although respondent-father's jurisdictional challenge was properly preserved for review, his claim of evidentiary error is being raised for the first time on appeal, rendering it unpreserved. *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). We review unpreserved issues in child protective proceedings under the plain error rule. *In re MJC*, 349 Mich App 42, 47; 27 NW3d 122 (2023).

To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings. The party asserting plain error bears the burden of persuasion with respect to prejudice. [*Id.* at 48 (quotation marks and citations omitted).]

Under MCL 712A.2(b)(2), a trial court has jurisdiction over a minor child found within the county "[w]hose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in." "The question at adjudication is whether the trial court can exercise jurisdiction over the child (and the respondents-parents) under MCL 712A.2(b) so that it can enter dispositional orders. . . ." *In re Ferranti*, 504 Mich 1, 15; 934 NW2d 610 (2019). To determine whether jurisdiction exists, "the trial court must examine the child's situation at the time the petition was filed." *In re Hockett*, 339 Mich App 250, 256; 981 NW2d 534 (2021). Crucially, a parent must be adjudicated unfit pursuant to MCL 712A.2(b) before the trial court may enter dispositional orders affecting the constitutionally protected parental rights of that parent. *In re Sanders*, 495 Mich at 421-422. Stated alternatively, parents must be adjudicated individually. See *id*.

During adjudication, "the rules of evidence generally apply, and petitioner has the burden of proving by a preponderance of the evidence one or more of the statutory grounds for jurisdiction alleged in the petition." *Id*. at 405, citing MCR 3.972(C) and (E). Hearsay is generally not admissible under the Michigan Rules of Evidence unless a hearsay exception applies. MRE 802; *In re Utrera*, 281 Mich App 1, 18; 761 NW2d 253 (2008). The rules define hearsay as a statement that "the declarant does not make while testifying at the current trial or hearing" and which "a party offers in evidence to prove the truth of the matter asserted in the statement." MRE 801(c)(1) and (2).

However, an out-of-court statement that is made by an opposing party and offered against that party is generally not considered hearsay. MRE 801(d)(2)(A). As articulated by the Michigan Supreme Court,

> the admissibility of a party-opponent statement springs from a sense of fundamental fairness captured in the phrase, "You said it; you're stuck with it." The hearsay rule operates to prevent a party from being "stuck" with what others have said without an opportunity to challenge them directly before the trier of fact. [*Shields v Reddo*, 432 Mich 761, 775; 443 NW2d 145 (1989).]

To be sure, respondents are petitioner's opposing parties. However, the plain language of MRE 801(d)(2)(A) limits the use of such opposing party statements to the party who made the statement. Thus, respondent-father cannot be "stuck with" the out-of-court statements made by respondent-mother; those statements are hearsay in relation to respondent-father, and they are therefore inadmissible absent an applicable exception.

MRE 803(4) provides an exception for a hearsay statement that is "made for—and is reasonably necessary to—medical treatment or diagnosis in connection with treatment" and which "describes medical history, past or present symptoms or sensations, their inception, or their general cause." However, the identity of the individual responsible for the hearsay declarant's injury "cannot be fairly characterized as the '*general* cause' of an injury." *People v LaLone*, 432 Mich 103, 113; 437 NW2d 611 (1989). Thus, a declarant's naming of the person responsible for her condition may not be admitted pursuant to MRE 803(4). *Id.* at 116. Consequently, any of respondent-mother's statements to Dr. Heselschwerdt identifying respondent-father do not fall under the hearsay exception for statements made for the purposes of medical diagnosis and treatment and are inadmissible absent some other applicable exception. Thus, to the extent the trial court relied on Dr. Heselscherdt's testimony regarding respondent-mother's claims to find jurisdiction over MT with respect to respondent-father, doing so would constitute plain error.

Similarly, respondent-mother's out-of-court statements to Campbell-Williams are, when offered to prove the truth of the matter asserted, plainly hearsay under MRE 801(c)(1) and (2). Therefore, any reliance of the trial court on Campbell-Williams's testimony regarding out-of-court statements made by respondent-mother likewise constitutes plain error.

However, even without consideration of the hearsay evidence, the preponderance of the evidence supports the trial court's exercise of jurisdiction over MT with respect to respondent-father. Respondent-mother testified that at the time the petition was filed respondent-father had been abusing her on a regular basis for the last two years. And on at least one occasion, MT was an incidental victim of the physical violence, having been injured by being struck in the head by a bottle thrown by respondent-father.

Although respondent-father was never convicted of domestic violence, respondent-mother's testimony is sufficient to establish that it occurred. Given our obligation to give due regard to the trial court's "special opportunity to observe the witnesses," *Kellogg*, 331 Mich App at 253, we are not left with a definite and firm conviction that an error has been made. Therefore, the trial court did not clearly err by finding that a preponderance of the evidence supported the trial court's exercise of jurisdiction pursuant to MCL 712A.2(b)(2).

## IV. CONCLUSION

We affirm the trial court's order of adjudication, but reverse the trial court's order removing MT from respondent-father's care and custody, and remand for further proceedings consistent with this opinion. If, on remand, petitioner again seeks removal of MT, the trial court must make findings on the record with respect to each of the factors enumerated in MCL 712A.13a(9). See *Williams*, 333 Mich App at 185. "In so doing, the trial court may and should consider up-to-date information." *Id*.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with his opinion. We do not retain jurisdiction.

/s/ Daniel S. Korobkin
/s/ Adrienne N. Young
/s/ Mariam S. Bazzi